[S.F. No. 22980. In Bank. Mar. 5, 1973.]

BAUER-SCHWEITZER MALTING CO., INC.,
Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent.

## COUNSEL

John P. Macmeeken, L. K. Whitaker and Chickering & Gregory for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and George E. Baglin, Deputy City Attorney, for Defendant and Respondent.

Lowenthal & Lowenthal, Morris Lowenthal and Juliet Lowenthal as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**McCOMB, J.**—Plaintiff appeals from a judgment in favor of defendant in an action to recover personal property taxes paid by it under protest.

Following a grand jury investigation in 1965, Russell L. Wolden, the then Assessor of the City and County of San Francisco, was charged with criminal misconduct in office. Thereafter, four San Francisco taxpayers

commenced a taxpayers' suit seeking a writ of mandate to require official action with respect to the situation brought about by Wolden's activities in office, as revealed by the grand jury investigation.

In the taxpayers' suit, the superior court directed issuance of a writ of mandate substantially as prayed for. The writ required, among other things, that the board of supervisors, in cooperation with the assessor and his office but "through" independent auditors, appraisers, and certified public accountants, make a full investigation, inquiry, and examination into the matter of loss of property tax revenues during any assessment year as to which recovery was permitted by law. The writ further ordered that the assessor and the board of equalization take appropriate action with respect thereto, making new assessments (including penal assessments) as authorized by law and recovering property taxes determined to be owing to the city and county (with appropriate penalties authorized by law).

The investigation made through the independent experts disclosed that the assessor had set a 50 percent assessment ratio as applicable to the inventories of business firms and that such assessment ratio was applied in 93 percent of the cases. Varying lesser assessment ratios were applied with respect to the remaining 7 percent of the business-firm taxpayers, including plaintiff.

On March 28, 1967, in accordance with the writ of mandate issued in the above mentioned taxpayers' suit, escaped assessments were rendered against plaintiff for alleged deficiencies in the personal property taxes paid by it for the years 1964, 1965, and 1966; and such escaped assessments were placed on the assessment roll for the year 1966. With one minor exception pertaining to the year 1966, plaintiff had accurately reported the cost of its inventories to the assessor; and the record does not show any fraud or any collusion between plaintiff and the assessor, or anyone in the assessor's office, with respect to the favored treatment given plaintiff. Plaintiff paid under protest the taxes imposed under the escaped assessments and sued for a refund. The matter was submitted on the pleadings, briefs, and arguments; and judgment was thereafter rendered in favor of defendant.

An appeal was taken from the judgment directing issuance of the writ in the taxpayers' suit, and the judgment was affirmed. (*Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184 [81 Cal.Rptr. 683].) The opinion handed down by the Court of Appeal correctly states the law and makes it clear that uniform assessments are required and that where the applicable assessment ratio has not been uniformly applied, escaped assessments must be made for

all years for which recovery is permitted by law, with penal assessments where the facts so warrant. It is indicated, however, that any affected taxpayer should be permitted to show, if it is possible to do so, that official compliance with the writ has resulted in discriminatory treatment to such taxpayer.

In holding that uniformity is required, the Court of Appeal stated, in part: "[T]he court determined that the assessor is under a duty 'not to allow anyone to escape a just and equal assessment through favor, reward or otherwise.' This statement primarily defines the assessor's duties (1) to assess *all* property in his jurisdiction and (2) to do so *on a uniform basis*. The statement was correct in both respects. The Constitution requires that *'All* property subject to taxation shall be assessed at its full cash value.' [Citation.] The duty to do this lies with the assessor. [Citations.] While the courts have interpreted the constitutional mandate as permitting him (the assessor) to assess taxable property at a fraction of its true market value [citation], the decisions impose upon him the duty to apply a fractional evaluation standard *uniformly* within his county. [Citations.] That he is under this duty necessarily means that he is obligated 'not to allow anyone to escape a just and equal assessment through favor, reward or otherwise.'

"Moreover, the same statement—relative to the assessor's duty 'not to allow anyone to escape' assessment—correctly bespeaks his statutory obligation to assess, upon discovery, 'property belonging on the local roll [which] has escaped assessment.' [Citation.] The trial court also correctly determined in the judgment that the assessor must 'penally assess, on discovery, any property willfully or fraudulently concealed to evade taxation.' [Citation.]" (Pp. 195-196 (1, 2) of 1 Cal.App.3d.)

In making it emphatic that the above rule applies even though the taxpayer has accurately reported the cost or value figures, the Court of Appeal said at page 194: "The writ further ordered the board of supervisors to conduct the project, in cooperation with the assessor and his office but 'through' independent experts ('auditors, appraisers and certified public accountants'). The experts were to be employed by the board for the purpose of identifying taxable properties which had not been assessed, or which had been underassessed or had 'otherwise escaped taxation for any reason,' *due to the assessor having applied an improperly low assessment ratio,* inaccurate reporting of cost or value by a taxpayer, *misuse of cost or value figures (accurately reported or not) by the assessor;* and the fixing of improperly low assessed valuations by the assessor pursuant to 'arrangement' with him or with anyone employed in his office. The experts were to make a full

audit or re-audit' and 'appraisal or re-appraisal' of property which, there was reasonable cause to believe, had escaped taxation by reason of any of the just-mentioned acts or omissions." (Italics added.)

The basis for the Court of Appeal's holding in *Knoff* was former article XI, section 12, of the California Constitution (now art. XIII, § 37), which provided, in part: "All property subject to taxation shall be assessed for taxation at its full cash value." In *County of Sacramento* v. *Hickman,* 66 Cal.2d 841, 848, 851 [59 Cal.Rptr. 609, 428 P.2d 593], this court held that such constitutional provision must be viewed in its historical context and that the statutory language on which the provision was based had for 60 years been consistently construed "to permit assessment at a uniform fraction of full cash value *provided the latter remained the standard or basis of each assessment.*" (P. 848 of 66 Cal.2d; italics added.)

■ Under the constitutional provision and the decisions interpreting it (e.g., *Hickman*), uniform assessment is required; and the provision is effective without the enactment of any legislation and is therefore self-executing. (See *Rose* v. *State of California,* 19 Cal.2d 713, 720 [1b] [123 P.2d 505]; *Chesney* v. *Byram,* 15 Cal.2d 460, 462 [1] [101 P.2d 1106].) By the terms of article I, section 22, the provisions of our Constitution "are manaatory and prohibitory, unless by express words they are declared to be otherwise" (see *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 8 (7) [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), and there are no express words requiring otherwise with respect to former article XI, section 12. Under the circumstances, there is no merit to the contention made by plaintiff that express statutory authorization is necessary.

In any event, however, statutory authorization for imposition of the escaped assessments existed. In 1966, section 401 of the Revenue and Taxation Code was amended to prescribe permissible assessment ratios for fiscal years commencing with the 1967-1968 fiscal year. (Stats. 1966, First Ex. Sess., ch. 147, p. 658.) But the escaped assessments here involved pertain to the years 1964, 1965, and 1966, as a result of which section 401, as it was in effect during such years, applies. The section then read, "Except as provided in this part, all taxable property shall be assessed at its full cash value." (Stats. 1939, ch. 154, p. 1285.) It was to the long, clearly established interpretation of the language of the predecessor statute of section 401 of the Revenue and Taxation Code (Pol. Code, § 3627[1]) to which this

---

[1]Section 3627 of the Political Code enacted in 1872, provided, "All property must be assessed at its full cash value."

court referred in pointing out in *Hickman* the special meaning with which the above mentioned constitutional provision was clothed and had to be interpreted; and that language was held to require uniform assessment. Consequently, in addition to the self-executing constitutional provision, there existed statutory authorization as well.[2]

■ To the extent that property has been assessed at an assessment ratio lower than the ratio properly established by the assessor for a particular year, such property has escaped assessment. Therefore, under sections 531 through 534 of the Revenue and Taxation Code an escaped assessment may be made in the amount of the deficiency for any year for which recovery is permitted by law.[3]

Attention has been called to the case of *Stafford* v. *Riverside County*, 155 Cal.App.2d 474, [318 P.2d 172], with respect to escaped assessments pertaining to real property, in which it was held that it is only where there

[2]It has been suggested that because article XIII, section 13, of the Constitution provides, "The Legislature shall pass all laws necessary to carry out the provisions of this article," specific statutory authorization was required  As hereinabove pointed out, no laws are necessary to carry out the provisions of the constitutional requirement of uniform assessment; but, in addition, attention has been called to statutory authorization which existed. In any event, the constitutional provision requiring uniform assessment did not become a part of article XIII until 1970, long after the time applicable to the assessments herein. More significantly, this court held in *Chesney* v. *Byram, supra,* 15 Cal.2d 460, that although legislation was appropriate with respect to another provision of article XIII (§ 1¼), no legislative enactment was required to put it into effect, thus clearly indicating that section 13 of article XIII did not make legislation mandatory.

[3]At the applicable time herein, section 531 of the Revenue and Taxation Code read: "If any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment." (Stats. 1959, ch. 1153, p. 3246; omitted portion pertains only to real property.)

Section 531.1 of the Revenue and Taxation Code at that time related to the situation where a lower assessment had resulted because of a failure by the taxpayer to report accurately the cost of the property. (Stats. 1959, ch. 1153, p. 3246.) Admittedly, such was not the situation here.

Section 532 of the Revenue and Taxation Code provided: "The assessor shall not assess personal property without the taxpayer's written permission for the year in which it escaped assessment after two assessment years succeeding the lien date for the year in which it escaped . . . ." (Stats. 1961, ch. 2015, p. 4229.)

Section 533 of the Revenue and Taxation Code provided: "Property escaping assessment shall be entered on the roll prepared or being prepared in the assessment year when it is so discovered and, if this is not the roll for the assessment year in which it escaped assessment, the entry shall be followed with 'Escaped assessment for year 19—.' " (Stats. 1939, ch. 154. p. 1290.)

Section 534 of the Revenue and Taxation Code provided: "This property shall be treated like, and taxed at the same rate applicable to, property regularly assessed on the roll on which it is entered." (Stats. 1961, ch. 2015, p. 4229.)

has been no assessment at all that the provisions for escaped assessments apply (p. 478), and to the case of *Jensen* v. *Byram,* 229 Cal.App.2d 651 [40 Cal.Rptr. 540], in which the holding in *Stafford* is discussed. To the extent that *Stafford* and *Jensen* are inconsistent with our holding herein, they are disapproved.

As pointed out above, under *Knoff* an affected taxpayer should be permitted to show, if possible, that discriminatory treatment to such taxpayer has resulted from official compliance with the writ of mandate. In the present case, however, although plaintiff had a hearing in the superior court, no evidence in this respect was presented. At that hearing, plaintiff had an opportunity to present any such evidence and is not now entitled to another chance.

The judgment is affirmed.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Taylor, J.,* concurred.

Appellant's petition for a rehearing was denied April 4, 1973.

*Assigned by the Chairman of the Judicial Council.