[Civ. No. 30798. First Dist., Div. Four. May 8, 1973.]

EX-CELL-O CORPORATION, Plaintiff and Respondent, v.
COUNTY OF ALAMEDA et al., Defendants and Appellants.

**COUNSEL**

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendants and Appellants.

Donahue, Gallagher, Thomas & Woods and Anthony J. Intinoli, Jr., for Plaintiff and Respondent.

**OPINION**

**DEVINE, P. J.**—County of Alameda, City of Oakland, and City of Emeryville appeal from a judgment of the Alameda County Superior Court ordering that plaintiff recover certain taxes which were paid under protest.

Ex-Cell-O Corporation was the owner of milk packaging machines which were leased to dealers in dairy products in Alameda County. During the years 1963, 1964, and 1965, the assessor sent to Ex-Cell-O business prop-

erty statements which required, inter alia, a listing of the original cost, selling price, and information relating to the rental of the equipment. The statements were timely filed by Ex-Cell-O with the assessor, but were incomplete in that the assessee reported only its original cost. It did not report the average yearly rental figures or the listed sales price of machines, although the forms sent to the assessee called for this information and admittedly the information was possessed by the assessee. Taxes totaling $8,495.87 for 1963, $7,926.49 for 1964, and $8,931.31 for 1965 were levied pursuant to assessments which were based on information supplied by respondent corporation, and were paid.

On or about November 2, 1965, the assessor caused the records of Ex-Cell-O for 1963, 1964, and 1965 to be audited. The auditor's worksheet showed that he extracted from respondent's records the selling prices of respondent's various machines but that he did not take note of their average yearly rental, the date of the original leases involved, or the life expectancy of the various machines. Subsequent to the audit, the assessor notified respondent that the machines that were originally assessed in 1963, 1964, and 1965 were being reassessed, based on the selling prices of those machines as disclosed by the audit. The difference between the costs reported by appellants to the assessor and the selling prices disclosed by the audit produced numerous escaped assessments totaling $499,050 with respect to the machines owned by respondent during the three years in question.

The Alameda County Board of Supervisors, sitting as a county board of equalization, held a hearing and upheld the escaped assessments as recommended by the assessor. On April 29, 1966, Ex-Cell-O paid under protest the amount demanded as escaped assessments.

Thereafter, Ex-Cell-O instituted the instant action to recover the taxes paid under protest. Appellants and respondent stipulated at trial that respondent accurately reported its *book cost* of the subject properties for each of the years in question under the heading of "Capitalized Value" and that this was not an issue to be tried. The trial court found no statutory authority for the escaped assessments and therefore held void the augmented taxes.

The court's decision was based on these propositions:

1) By virtue of the holding in *Stafford* v. *Riverside County,* 155 Cal. App.2d 474 [318 P.2d 172], and of the Attorney General's discussion of *Stafford* in 47 Ops.Cal.Atty.Gen. 76, 78, it is only where there was no assessment at all of the subject property does the provision for escaped assessment apply, except in cases wherein Revenue and Taxation Code

section 531.1 applies. (Since 1967, and therefore subsequent to the years relevant to this case, the contents of former section 531.1 are to be found in Revenue and Taxation Code section 531.3, by renumbering. Throughout this opinion, reference is made to section 531.1, with parenthetical reference to the new numbering.)[1]

2) Section 531.1 (now § 531.3) created but a limited exception to the rule of the *Stafford* case; that is, if the assessee has omitted to report its *cost* accurately, escaped assessment will lie. But *cost* is not to be equated with selling price, and the purported escaped assessment was based on the difference between the cost reported by plaintiff, which had been reported accurately, and the published selling price for equipment of the type of the subject leased property.

Subsequent to briefing on appeal, there was rendered a decision of the Supreme Court in *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco,* 8 Cal.3d 942 [106 Cal.Rptr. 643, 506 P.2d 1019]. This decision disapproves the *Stafford* case and makes inapplicable respondent's argument, and the trial court's decision in so far as these are based on that case. *Bauer-Schweitzer* establishes that property *must* be assessed uniformly, that uniformity must be accomplished even though there has been an earlier assessment, where the assessment was too low, and that an under-assessment cannot be sustained although all parties acted in good faith.

■■■ But respondent's arguments before *Bauer-Schweitzer,* and its arguments now, go beyond those (the *Stafford* rule, and the good-faith proposition) which concededly are invalidated by that decision. Respondent contends that *Bauer-Schweitzer* holds that where the assessor has not applied the assessment *ratio* uniformly an escaped assessment may be levied; but in the present case, even if there be error in the valuation of the property, the ratio was the same as that applied to all property within the county. Respondent further contends that not only is there no statutory authority for levying an escaped assessment in this case, but also that Revenue and Taxation Code section 531.1 (now § 531.3) by its explicit reference to faulty reporting by the assessee in respect of *cost,* impliedly excludes escaped assessment in a case wherein cost has been reported accurately. In *Bauer-Schweitzer,* a new assessment was directed by writ of mandate issued against the assessor and the Board of Equalization of the City and County of San

[1]Section 531.1 read as follows: "If the assessor requires an assessee to describe personal property in such detail as shows the cost thereof but the assessee omits to report the cost of the property accurately, notwithstanding that this information is available to the assessee, to the extent that this omission on the part of the assessee causes the assessor not to assess the property or to assess it at a lower valuation than he would enter upon the roll were the cost reported to him accurately, that portion of the property as to which the cost is unreported, in whole or in part, may be assessed as property that has escaped assessment." (Stats. 1959, ch. 1153, § 3, p. 3246.)

Francisco because of lack of uniformity of the assessment ratio as applied by the assessor, although the assessee had reported accurately the cost of its inventories (8 Cal.3d at p. 944). The Supreme Court, adopting in large part the opinion in *Knoff* v. *City etc. of San Francisco*, 1 Cal.App.3d 184 [81 Cal.Rptr. 683], affirmed the judgment which directed the new assessment because of the constitutional imperative that "All property subject to taxation shall be assessed . . . at its full cash value." (Cal. Const., art. XI, § 12.) The court had held in *County of Sacramento* v. *Hickman*, 66 Cal.2d 841 [59 Cal.Rptr. 609, 428 P.2d 593], that assessment at a uniform fraction of full cash value was permis 'ble in view of the historical context of the constitutional provision, provided the full cash value remained the standard or basis of each assessment. Thus, uniformity of assessment is required (8 Cal.3d at p. 946). The constitutional provision was declared to be self-executing in *Bauer-Schweitzer (id.* at p. 946).

We discern no meaningful distinction between the lack of uniformity which is caused by application by the assessor of different ratios against different properties than that which is caused by faulty or incomplete reporting by the assessee which has effected a lower valuation of the property. In the first case, the multiplier is false; in the second, the multiplicand is defective. The result of the essential process of multiplication is the same, although perhaps in different degree. To be sure, the selection of discriminatory ratios is the work of the assessor, while the fault in reporting is not originally that of a public officer but of the taxpayer. Nevertheless, the duty imposed on the taxpayer is one created by statute. Revenue and Taxation Code section 441, subdivision (d) provides: "At any time, as required by the assessor for assessment purposes, every person shall make available for examination information or records regarding his property. In this connection details of property acquisition transactions, construction and development costs, rental income, and other data relevant to the determination of an estimate of value are to be considered as information essential to the proper discharge of the assessor's duties." Section 445 of the Revenue and Taxation Code provides: "The property statement shall show a description of personal property, in the detail required by the assessor. Except as to the household furnishings and personal effects of householders, such required detail may include the cost of the personal property if the information is within the knowledge of the assessee or is available to him from his own or other records." In the case before us, the assessee did not provide the information which the assessor, acting under the statutes, had demanded. Thus, the assessor was unable to perform to the full his duty until the audit had been made. The fact that the omission was not done in bad faith is irrelevant under the ruling of *Bauer-*

*Schweitzer,* except that a penalty could not be exacted of the assessee. The self-executing provision of the Constitution applies and sustains the escaped assessment.[2]

The statutes do not limit, but support the challenged assessment. Revenue and Taxation Code section 531.1 (now § 531.3) does not constitute a limitation by its specifying of a single situation in which an escaped assessment may be levied, upon the power of the assessor to levy the escaped assessment in the instant case, if (as discussed below), the faulty reporting by the assessee has brought about an underassessment. ■ A statute cannot limit a self-executing provision of the Constitution. ■ On the affirmative side, section 531 of the Revenue and Taxation Code, as it read at the applicable time herein, provided: "If any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment. . . ." (Stats. 1959, ch. 1153, § 2, p. 3246.) The property in the case at bench had not *entirely* escaped assessment, but neither had the property in the *Bauer-Schweitzer* case. But it was held that section 531, in addition to the self-executing provision of the Constitution, was applicable (8 Cal.3d at p. 947). In both cases, the property had escaped proper assessment, and in both cases the assessor has the power and the duty by constitutional and statutory authority to effect correct assessment.

Respondent cites 47 Ops.Cal.Atty.Gen. 76 for the proposition that an escaped assessment under section 531.1 would be improper if levied against taxpayers who did not fail to report inventory costs accurately, but who had obtained reduction of assessed values by alleging obsolescence or other factors. Wherefore, respondent argues, there being no inaccurate report of actual cost in this case, there can be no escaped assessment. But if this argument were at one time valid, it is no longer so because of the rulings in *Bauer-Schweitzer* on the provision of the Constitution as being self-executing and the application of section 531. Besides, the Attorney General's opinion was based in part on the now defunct *Stafford* case.

Finally, a brief explanation of the method by which the assessor deter-

---

[2]Revenue and Taxation Code section 531.4, enacted in 1969, makes specific provision for reassessment when an assessee files an inaccurate property statement on a form prescribed by the board of equalization, regardless of whether the assessee had available the correct information. But however desirable specific statutory authorization to the assessor may be, no legislative enactment was required to effectuate the constitutional mandate. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 947, fn. 2; *Chesney* v. *Byram,* 15 Cal.2d 460 [101 P.2d 1106].)

mined the value of the leased machines is in order. The explanation has been provided from the testimony at the trial by the principal auditor and appraiser in charge of the business division of the assessor's office of Alameda County. In 1962 the assessor started assessing on the trade level theory because of guidelines contained in the Assessors' Handbook of 1961, a publication of the State Board of Equalization which issues guidelines to assessors. As applied to leased equipment, the trade level theory is designed to produce equity between taxpayers. If it were not applied, and in the years before it was applied, the taxpayer who owned business equipment would be taxed on the basis of the selling price to him, reduced by such factors as depreciation and obsolescence. But in the case of leased equipment, the taxpayer, in this instance the lessor, would be taxed on the basis of the cost of producing the equipment. The purpose of the assessor is to find the fair market value of any given property in the hands of the person who holds it on the lien date of any year. By using the trade level concept, the assessor puts all of the identical equipment on the same basis, whether the ultimate user chooses to lease it or to buy it, because its value is the same to all.[3] In the case of leased equipment, the assessment is to the lessor and although there may be a contractual arrangement between the lessor and the lessee, this of course has no effect upon the action of the lessor. In the case of manufacturers who do not sell any equipment but only lease it, capitalization of income from the leasing is used to establish value.

The trade level principle of assessment has not been shown by any

---

[3]The trade level principle is expressed succinctly in Ehrman & Flavin, Taxing California Property, section 380, page 346, as follows: "Inventory includes raw materials, work in process, and finished goods. It is taxable in all these stages. Moreover, since goods which are finished to a manufacturer may only be materials to a purchaser, it is apparent that more than one cycle of trade levels may occur between the first processor and the consumer. Unlike the situation in valuing equipment, therefore, the trade level is an important consideration in the proper valuation of inventory, whether the trade level be manufacturing, retail, or consumer. At the consumer level, of course, the property ceases to be inventory. The new regulations issued by the State Board of Equalization on valuation principles and procedures specifically require the assessor to give recognition to trade level and the principle that property normally increases in value as it progresses through production and distribution channels to the consumer level." In the 1973 Supplement, page 112, the following is added: "The State Board's rules expressly provide that tangible personal property in the hands of the consumer must be valued in accordance with the comparative sales, cost or income method. An exception, however, is property which the taxpayer leases or rents for a period of less than six months, which is to be valued by reference to the property's cost to the lessor, or the price at which the lessor could be expected to sell it, less his experienced gross profit."

A detailed account of the procedure for assessing tangible personal property at the trade level is given in title 18, section 10 of the California Administrative Code.

evidence offered by respondent to be inequitable or to be other than consonant with the duties of the assessor, as described above. Although one of the issues described in the joint pretrial statement, which was adopted by the court in its pretrial conference order, was stated to be sufficiency of the evidence to support the valuations, if it were held that the escaped assessments were legally made, this issue may be deemed abandoned because it was not argued in the briefs in the trial court or in the briefs on appeal, and there is no reference to it in the findings of fact or conclusions of law.

The judgment is reversed, with directions to the trial court to enter judgment for the defendants.

Rattigan, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, sitting under assignment by the Chairman of the Judicial Council.