[Civ. No. 35290. First Dist., Div. Four. July 23, 1975.]

HEWLETT-PACKARD COMPANY, Plaintiff and Respondent, v.
. COUNTY OF SANTA CLARA et al., Defendants and Appellants.

**COUNSEL**

William M. Siegel, County Counsel, Byron D. Athan and Richard K. Abdalah, Deputy County Counsel, for Defendants and Appellants.

Finch, Sauers, Player & King, Ehrman, Flavin & Morris and Kenneth A. Ehrman for Plaintiff and Respondent.

O'Melveny & Myers and Frederick A. Richman as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**KEANE, J.**\*—The County of Santa Clara and others appeal from a judgment in favor of Hewlett-Packard Company in an action to recover taxes paid under protest.

The case was tried upon an agreed statement of facts. Respondent is a manufacturer of electronic equipment in Santa Clara County. From 1968 through 1971, respondent furnished to the Santa Clara County Assessor all information required by law or requested by him regarding respondent's self-constructed equipment. The county assessor's personnel who were assigned to place a value on the property, however, were not aware that some property described on respondent's statements as "electronic test equipment" was made by respondent. They therefore assessed the property on the basis of manufacturing costs rather than by the trade level method as set forth in 18 California Administrative Code section 10. In 1971, an auditor of the assessor's office realized that some property used by respondent had been self-manufactured and revalued the property for the 1967 to 1971 tax years according to the trade level method. The assessor thereupon levied escape assessments based on the trade level rules. The assessment ratio was 25 percent for the years in question. The escape assessments resulted in additional taxes totaling $367,439.46, which respondent paid under protest. Respondent exhausted its administrative remedies and brought this action to recover the taxes.

Appellants contend that California Constitution article XIII, section 37, conferred authority upon the assessor to levy an escape assessment in this case. Article XIII, section 37, provided in part: "All property subject to taxation shall be assessed for taxation at its full cash value."[1] The provisions of section 37 are self-executing. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946 [106 Cal.Rptr. 643, 506 P.2d 1019]; *Ex-Cell-O Corp.* v. *County of Alameda* (1973) 32 Cal.App.3d 135, 140 [107 Cal.Rptr. 839].) In *Bauer-Schweitzer, supra,* the taxpayer had accurately reported the cost of its taxable property to the San Francisco County Assessor. Due to the criminal misconduct of the assessor, however, its property was under-assessed by application of an improper assessment ratio. The record did

---

\*Assigned by the Chairman of the Judicial Council.

[1]This provision has now been transferred to California Constitution, article XIII, section 1.

not establish any fraud or collusion between the taxpayer and the assessor regarding the favored treatment. (*Id.*, 8 Cal.3d at p. 944.) The court held, nonetheless, that the self-executing provisions of California Constitution article XIII, section 37, conferred authority upon the county to levy escape assessments against the under-assessed property. Express statutory authorization for the escape assessments was deemed unnecessary. (8 Cal.3d at p. 946.) In *Ex-Cell-O Corp., supra,* the rationale of the *Bauer-Schweitzer* case was extended to property which had been under-assessed due to errors in valuation. (32 Cal.App.3d at pp. 138-139.) Although the valuation errors had been caused by faulty and incomplete reporting by the assessee and a statute had authorized an escape assessment in that case, this court held that the assessor had constitutional authority to recapture the amount "escaped" from taxation. (32 Cal.App.3d at pp. 139-140.)

Respondent defends the judgment below with what is termed two alternative arguments: first, that tangible personal property may be subjected to escape assessments only under conditions prescribed by the Legislature pursuant to its power under article XIII, section 14 (now art. XIII, § 2) of the California Constitution, and the Legislature has not so provided within the context of this case; and second, that taxable property may be subject to escape assessment only when an underassessment is caused by some act or omission of the taxpayer or wrongdoing by the assessor.

■ The essence of respondent's article XIII, section 14, argument is that under that section the Legislature has plenary power "to provide for the assessment . . . of tangible personal property . . . as may be provided by law . . ."; that section is more specific than article XIII, section 1 (requiring that all taxable property be taxed in proportion to its value) and article XIII, section 37 (providing that all taxable property be assessed at full cash value); that section 14 overrides the general mandates of section 1 and section 37; that Revenue and Taxation Code sections 501 through 503 and 531 through 532 prescribe all the conditions under which tangible personal property may be subject to escape assessment; that these sections, being valid exercises of the Legislature's power under section 14, preempt the field; that none of the escape assessment statutes authorize the escape assessments in the case at bench; that, therefore, the escape assessments involved in this case are invalid.

Article XIII, section 14 (now art. XIII, § 2) provides in part: "The Legislature shall have the power to provide for the assessment, levy

and collection of taxes upon all forms of tangible personal property, all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable interest therein, not exempt from taxation under the provisions of this Constitution, in such manner, and at such rates, as may be provided by law, and in pursuance of the exercise of such power the Legislature, two-thirds of all of the members elected to each of the two houses voting in favor thereof, may classify any and all kinds of personal property for the purposes of assessment and taxation in a manner and at a rate or rates in proportion to value different from any other property in this State subject to taxation and may exempt entirely from taxation any or all forms, types or classes of personal property."

Under the provisions of this section, the Legislature is empowered to classify personal property so as to allow preferential tax treatment for certain classes of property or to exempt such property from taxation entirely. If respondent is assuming that section 14 directly conflicts with sections 1 and 37, such assumption is unfounded. The constitutional mandate for uniform taxation, as provided for in sections 1 and 37, applies only to property which has not been classified in a manner different from other property or has not been exempted from taxation in whole or in part. Section 1 states that "All property . . . *except as otherwise in this Constitution provided,* . . . shall be taxed in proportion to its value . . ." (Italics added.) Section 37 only requires that "*property subject to taxation* . . . be assessed . . . at its full cash value." (Italics added.) Section 14, on the other hand, does not purport to authorize the Legislature to abridge the constitutional duty to equalize assessments as to personal property which has *not* been classified in a manner different from other property or which has *not* been exempted from taxation. Sections 1 and 37 therefore cannot be said to conflict with section 14. (See *People* v. *Keith Railway Equipment Co.* (1945) 70 Cal.App.2d 339, 350 [161 P.2d 244].)

If a class of personal property has been validly exempted in whole or in part, then the principle of uniform taxation under article XIII, sections 1 and 37, would not come into play. However, the assessor has the power and duty under the Constitution to assess all nonexempt property uniformly, subject only to such reasonable regulations as the Legislature may enact. (See *Imperial Irr. Dist.* v. *County of Riverside* (1950) 96 Cal.App.2d 402, 406-407 [215 P.2d 518]; cf. *Forster Shipbldg. Co.* v. *County of Los Angeles* (1960) 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736]; *Lutheran Hospital Soc.* v. *County of L. A.* (1944) 25 Cal.2d 254,

256-257 [153 P.2d 341]; *Chesney* v. *Byram* (1940) 15 Cal.2d 460, 463 [101 P.2d 1106].) Accordingly, there is no merit in respondent's contention that the Legislature's powers to exempt personal property from taxation or to classify personal property for tax treatment will be abridged if the principle of uniform taxation is given full force and effect. Since the property in question was not exempt, the county assessor had inherent power to equalize assessments by capturing the amount "escaped" from taxation.

▮ Respondent's second alternative argument is basically a contention that the holdings in *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d 942, and *Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d 135, should be limited to their facts, that is, the property in question should not be subject to escape assessment unless the under-assessment was the result of wrongdoing on the part of the assessor, as in *Bauer-Schweitzer,* or the result of some act or omission of the taxpayer, as in *Ex-Cell-O.*

It is, of course, true that the taxpayer in *Bauer-Schweitzer* had been spared full assessment on its property due to the gross misconduct of the county assessor. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 944.) The Supreme Court could have based its decision upon the narrow ground of unjust enrichment. (See the suggestion in 48 Ops.Cal.Atty.Gen. 71 (1966).) Instead, it disposed of the case on constitutional grounds.

In approving the decision rendered by this court in *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal.Rptr. 683], the Supreme Court set forth a broad mandate for the levying of escape assessments: "[W]here the applicable assessment ratio has not been uniformly applied, escaped assessments must be made for all years for which recovery is permitted by law . . ." (*Id.,* 8 Cal.3d at pp. 944-945); "the assessor is under a duty 'not to allow anyone to escape a just and equal assessment through favor, reward *or otherwise.*' " (Italics added.) (*Knoff* v. *City etc. of San Francisco, supra,* 1 Cal.App.3d at p. 195; accord, *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 945.) Clearly, the Supreme Court did not intend to limit escape assessments to cases of official misconduct. As this court emphasized in *Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at page 138: "*Bauer-Schweitzer* establishes that property *must* be assessed uniformly, that uniformity must be accomplished even though there has been an earlier assessment, where the assessment was too low, and that *an under-assessment cannot be sustained although all parties acted in good faith.*" (Italics added.)

Respondent contends (citing *Clunie* v. *Siebe* (1896) 112 Cal. 593, 597 [44 P. 1064]; *Stafford* v. *Riverside County* (1957) 155 Cal.App.2d 474, 478 [318 P.2d 172]; 48 Ops.Cal.Atty.Gen. 71, 72 (1966); 47 Ops.Cal.Atty.Gen. 76, 78 (1966)) that it is inequitable to affix additional tax liability on a taxpayer where he has fully and accurately reported the cost of his property and the assessor has honestly, though mistakenly, failed to assess the property to the fullest extent provided by law. However, both the *Stafford* case and the opinion rendered in 47 Opinions of the Attorney General 76, have been disapproved. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at pp. 947-948; *Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at p. 140.) To the extent that *Clunie* v. *Siebe, supra,* and 48 Ops.Cal.Atty.Gen. 71, purport to limit the constitutional powers of the assessor to levy escape assessments against undervalued property, they have also been implicitly overruled. (See *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 945, quoting *Knoff* v. *City etc. of San Francisco, supra,* 1 Cal.App.3d at p. 194; *Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at pp. 138, 140.) No meaningful distinction can be perceived between a taxpayer who has received a windfall by reason of an assessor's honest mistake and one who is an innocent beneficiary of official misconduct; in either event, the local government incurs losses of tax revenue to which it is rightfully entitled. It is no defense that the parties have acted in complete good faith. (See *Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at p. 138.)

Respondent argues, nonetheless, that the escape assessments should not have been levied in this case since they were not expressly authorized by statute. But where a constitutional provision is self-executing, "it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail, or abridge this constitutional grant." (*Western Assn. etc. R.R.* v. *Railroad Comm.* (1916) 173 Cal. 802, 804 [162 P. 391, 1 A.L.R. 1455]; accord, *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723], app. dism., 348 U.S. 859 [99 L.Ed. 677, 75 S.Ct. 87].) "No laws are necessary to carry out the provisions of the constitutional requirement of uniform assessment . . ." (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 947, fn. 2; accord, *Ex-Cello-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at p. 140, fn. 2.)[2]

---

[2]Moreover, as discussed *infra,* the escape assessments herein were authorized by statute as well.

It is argued that the policy of finality in tax administration militates against a broadening of the assessor's powers to levy escape assessments. This argument is more properly addressed to the Legislature. As indicated earlier, the Legislature has the power to enact reasonable procedural regulations to facilitate the orderly collection of taxes. (See (*Imperial Irr. Dist.* v. *County of Riverside, supra,* 96 Cal.App.2d at pp. 406-407.)[3]

It may be true, as respondent contends, that complete uniformity of taxation is an unattainable goal. Nonetheless, the assessor should not be impeded in his efforts to collect taxes as uniformly as his limited resources will permit.

Appellants also argue that the escape assessments herein were authorized by statute. Revenue and Taxation Code section 531 provided: "If any property belonging on the local roll has escaped assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment. It shall be subject to the tax rate in effect in the year of its escape except as provided in Section 2905 of this code." In *Bauer-Schweitzer, supra,* 8 Cal.3d at page 947, the Supreme Court declared that the assessor had broad powers under section 531 to levy escape assessments against under-assessed property: "To the extent that property has been assessed at an assessment ratio lower than the ratio properly established by the assessor for a particular year, such property has escaped assessment. Therefore, under sections 531 through 534 of the Revenue and Taxation Code an escaped assessment may be made in the amount of the deficiency for any year for which recovery is permitted by law." In *Ex-Cell-O Corp., supra,* 32 Cal.App.3d at page 140, this court also held that section 531 empowered the assessor to effect a correct assessment where taxable property had been erroneously valued.

Respondent maintains that section 531 should not be extended to situations where the assessor had made a mistake in judgment of value. As indicated earlier, however, the Supreme Court did not base its decision in *Bauer-Schweitzer* on the narrow ground of official misconduct; its opinion makes clear that the assessor has statutory authority to act in every case where property had been under-assessed.

---

[3]There is no merit to respondent's claim that existing statutes do not give the taxpayer a comparable period in which to recover taxes erroneously collected. Whether an over-assessment or under-assessment is claimed, the taxpayer or assessor may bring suit for recovery within four years. (Compare Rev. & Tax. Code, § 532, with Rev. & Tax. Code, § 5097.)

It is argued that the reference to Revenue and Taxation Code section 2905[4] in section 531 establishes a legislative intent to authorize escape assessments only as to property which has *totally* escaped assessment. This contention is unsound. While section 2905 prescribes the tax rate for property which had not appeared on the assessment rolls in the year in which it should have been assessed, it does not purport to limit escape assessments for property which has been under-assessed for any given year. It is concluded that the assessor had statutory authorization to levy the assessments in this case.

It is not disputed that the trade level principle of assessment was properly applied in this case. Accordingly, it is unnecessary to remand the case for further findings on the issue of valuation. (*Ex-Cell-O Corp.* v. *County of Alameda, supra,* 32 Cal.App.3d at pp. 141-142.)

The case originally involved the year 1967. The parties stipulated that the taxes for 1967 were invalidly collected and shall be refunded and the trial court so found.

Insofar as the judgment allows a refund to plaintiff of taxes paid on causes of action one through four, inclusive, the judgment is affirmed.

Insofar as the judgment denies recovery to plaintiff on causes of action numbers 19, 21, 23, 24, 37 and 38, the judgment is affirmed.

In all other respects the judgment is reversed with directions to enter judgment for appellants.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied August 18, 1975, and the judgment was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 30, 1975.

---

[4]Revenue and Taxation Code section 2905 provides: "In collecting taxes on unsecured property the tax rate to be used is the rate for property of the same kind on the secured roll last fixed before the lien date for the taxes to be collected. In collecting taxes on unsecured property that escaped taxation in any prior year or years the rate to be used shall be the rate to which the property would have been subject if it appeared upon the roll in the year when it should have been lawfully assessed. The taxes on unsecured property shall be computed in dollars and cents, rejecting the fractions of a cent."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.