[Civ. No. 15480. Fourth Dist., Div. Two. Apr. 22, 1976.]

Estate of EDGAR OLIN COOKE, Deceased.
KENNETH CORY, as State Controller, Petitioner and Respondent, v.
ELSIE J. COOKE, Objector and Appellant.

## Counsel

Paul, Hastings & Janofsky, Carl Mitchell and John E. Trinnaman for Objector and Appellant.

Myron Siedorf, Margaret Groscup and Mary Cardiff for Petitioner and Respondent.

## Opinion

TAMURA, Acting P. J.—This is an appeal from an order determining the amount of inheritance tax liability resulting from the death of Edgar Olin Cooke (decedent). The controlling issue is whether Revenue and Taxation Code section 13409 (hereafter section 13409) permits avoidance of inheritance tax by a disclaimer of interest where decedent's death occurred before the effective date of the section.[1]

The pertinent facts are as follows: On March 13, 1972, decedent established a revocable *inter vivos* trust (hereafter Edgar Olin Cooke trust) under the terms of which Elsie J. Cooke (appellant) was granted a power of appointment with respect to the principal and any undistributed income of the trust estate.[2] Decedent died on June 5, 1972. By an

---

[1]Section 13409 (effective Aug. 16, 1972) provides: "Transfers of any interest in real or personal property and all rights and powers relating to the same which have been duly disclaimed pursuant to the provisions of Chapter 11 (commencing with Section 190) of Division 1 of the Probate Code or in any other valid manner, shall be subject to the inheritance tax only if, and to the same extent and in the same manner as, the same would have been subject to such tax if such interest, rights and powers had been originally created in favor of and transferred to the same persons and in the same shares in which they are effectively distributed or otherwise disposed of, after giving full effect to such disclaimers pursuant to the governing instrument, if any, and Chapter 11 (commencing with Section 190) of Division 1 of the Probate Code and all other applicable law."

[2]The terms of the power were as follows:

"(c) *Power to Give to Issue*

"ELSIE J. COOKE shall have the power to appoint the principal and any undistributed income of the Trust Estate held for her benefit, or any part thereof, to any lawful issue of Trustor. Such power of appointment shall be exercised only by ELSIE J. COOKE submitting to the Trustee written instructions, during her lifetime or by a provision in her Last Will expressly exercising such power. This power shall not be exercisable in favor of ELSIE J. COOKE, her estate, her creditors or the creditors of her estate.

"(d) *Death of* ELSIE J. COOKE

"Upon the death of ELSIE J. COOKE, or if ELSIE J. COOKE shall not survive

urgency measure effective August 16, 1972, the Legislature added a new chapter to the Probate Code pertaining to disclaimer of testamentary and other interest (ch. 11, div. 1, § 190 et seq.; hereafter disclaimer statute) and added section 13409. (Stats. 1972, ch. 990, p. 1805.) On March 2, 1973, appellant executed and filed with herself as trustee of the Edgar Olin Cooke trust an instrument entitled "disclaimer," the text of which is set out in the margin below.[3]

The Elsie J. Cooke trust of which appellant was both the trustor and trustee and which was in existence when decedent died was established by appellant on March 7, 1972. Under the terms of that trust, appellant, as trustor, had the right from time to time to direct the trustee to pay any part or all of the principal of the trust estate to the "trustee" or to any person the "trustee" directs. The trust further provided that: "During the lifetime of a Trustor, a Trustor shall have the full and unrestricted power to revoke or amend the Trust."

The Edgar Olin Cooke trust assets had a clear market value of $435,073. The State Controller refused to give effect to the disclaimer for inheritance tax computation purposes and treated appellant as the transferee of all of the trust's assets. He determined that those assets plus certain other inheritances resulted in a total inheritance tax liability of $92,009.36.

Appellant filed objections to the State Controller's determination and petitioned the court for a determination of the proper amount of tax

---

Trustor, any part of the Trust Estate with respect to which ELSIE J. COOKE shall not have exercised her power of appointment shall be distributed to the Trustee, or any Successor Trustee, of the ELSIE J. COOKE DECLARATION OF TRUST DATED MARCH 7, 1972, and such property shall be held, managed, apportioned and distributed in accordance with the provisions of such trust declaration."

[3] The disclaimer reads:

"(1) EDGAR OLIN COOKE created, by Trust Agreement, the EDGAR OLIN COOKE TRUST, dated March 13, 1972.

"(2) On page 2 of such Trust certain powers were granted to me, ELSIE J. COOKE, under paragraphs (c) and (d).

"(3) I hereby disclaim and renounce in total any and all right, power, or privilege I may have under such paragraphs (c) and (d); and the Trust Estate of the EDGAR OLIN COOKE TRUST shall be distributed upon my death to the Trustee, or any Successor Trustee, of the ELSIE J. COOKE DECLARATION OF TRUST dated March 7, 1972, and such property shall be held, managed, apportioned and distributed in accordance with the provisions of such ELSIE J. COOKE DECLARATION OF TRUST as they existed at the time of EDGAR OLIN COOKE's death; and I hereby disclaim and renounce any right, power or privilege I may have, if any, to affect such distribution.

"(4) As Trustee of the EDGAR OLIN COOKE TRUST Dated March 13, 1972 I hereby acknowledge the filing of this Disclaimer."

liability. On the theory that her disclaimer caused decedent and appellant's daughter to be the transferee of the remainder interest in the Edgar Olin Cooke trust, appellant contended that the correct inheritance tax liability should be $44,092.96. The State Controller responded that the taxes should be computed in accordance with the laws in effect at the date of decedent's death and that the disclaimer should be given no effect in the computation of the amount of inheritance tax.

The trial court made findings and conclusions in favor of the State Controller. It decided that the disclaimer executed by appellant did not satisfy the requirements of Probate Code sections 190, subdivision (c), and 190.6 and was not a legally valid disclaimer. Accordingly, the court overruled appellant's objections to the determination of tax liability and decreed that appellant is liable for inheritance taxes in the total sum of $92,009.36. Appellant appeals from that order.

Appellant contends that the disclaimer meets all of the requirements of the disclaimer statute and that the taxes should have been computed in accordance with section 13409, giving full effect to the disclaimer. The State Controller's response is twofold: (1) The state's right to the inheritance tax vested as of the date of decedent's death and could not be affected by a disclaimer executed pursuant to the subsequent enactments and (2) even assuming the applicability of the subsequent legislation, the disclaimer was ineffective because it either constituted an assignment of interest or it resulted in the remainder interest in the Edgar Olin Cooke trust going to appellant's trust which in turn reserved to her the power of appointment. From the discussion which follows, we have concluded that the state's first response is valid and dispositive of this appeal.

At the date of decedent's death (June 5, 1972), former section 13409 provided that inheritance taxes are to be computed in accordance with the terms of the will admitted to probate notwithstanding a renunciation by a transferee of his rights under the will or an agreement that the estate shall be distributed otherwise than as provided in the will. It also provided that an heir could not affect the computation of the amount of the tax by a waiver or renunciation of his interest or by an agreement for distribution other than in accordance with the laws of succession.[4] (See 5 Witkin, Summary of Cal. Law, Taxation, p. 4185.)

---

[4]Former section 13409 provided: "If a transferee under a will renounces his rights under the will, or any part thereof, or agrees that the estate, or any part of it, shall be

By an urgency measure effective August 16, 1972, the Legislature added the new disclaimer statute (Prob. Code, § 190 et seq.), repealed former section 13409, and added the new section 13409. (See 5 Witkin, Summary of Cal. Law, Taxation, § 218, pp. 4185-4186; 4 Pacific L.J. 246-248.) The new section (quoted fn. 1, *ante*) now provides that transfers of any interest in property "and all rights and powers relating to the same" which have been duly disclaimed pursuant to the provisions of chapter 11 of division 1 of the Probate Code or in any other valid manner, "shall be subject to the inheritance tax only if, and to the same extent and in the same manner as, the same would have been subject to such tax if such interest, rights and powers had been originally created in favor of and transferred to the same persons and in the same shares in which they are effectively distributed or otherwise disposed of, after giving full effect to such disclaimers. . . ."

Following enactment of the new legislation the State Controller promulgated the following inheritance and gift tax regulation (Cal. Admin. Code, tit. 18, ch. 2.5, § 13409(a)(2), effective May 13, 1973): "If a transferee under a will, an heir of an intestate or a transferee of an inter vivos transfer subject to inheritance tax disclaims any interest in the estate of the decedent or in the property transferred, in whole or in part, pursuant to the provisions of Chapter 11 (commencing with Section 190) of Division 1 of the Probate Code, and the date of death of the decedent is prior to August 16, 1972, the tax is nevertheless computed as though no disclaimer had been filed."

The State Controller contends that the foregoing regulation validly expresses a long-settled principle that the state's right to inheritance tax vests at the date of decedent's death and that the Legislature cannot by subsequent enactment surrender, diminish or otherwise impair that right. We agree.

It has long been the rule in California that the state's right to inheritance tax vests as of the date of a decedent's death and cannot be affected by subsequent waiver, renunciation or disclaimer of interest in the estate by a transferee or heir. (Former § 13409; *Cohn* v. *Cohn,* 20 Cal.2d 65, 68-69 [123 P.2d 833]; *Estate of Rossi,* 169 Cal. 148, 149 [146 P.

---

distributed otherwise than as provided in the will, the tax is nevertheless computed in accordance with the terms of the will admitted to probate. If an heir waives or renounces his interest in the estate, or enters into an agreement that the property to which he is entitled shall be distributed otherwise than in accordance with the laws of succession, the tax is nevertheless computed as if he had not so waived or renounced."

430]; *Estate of Desmond,* 34 Cal.App.3d 139, 143 [109 Cal.Rptr. 50]; *Estate of Beville,* 66 Cal.App.2d 271, 277 [152 P.2d 229]; *Kelso* v. *Sargent,* 11 Cal.App.2d 170, 177 [54 P.2d 26].) Appellant urges that the cited cases are no longer controlling because the Legislature intended the new section 13409 to give effect to a disclaimer executed pursuant to the new disclaimer statute even though the decedent died before the effective date of the statute.

In the first place we are not persuaded that the Legislature intended section 13409 to apply retroactively to interest transferred before its effective date. In support of her contention that the Legislature intended the section to have retrospective effect, appellant refers to the direction in section 13409 that inheritance taxes are to be computed "after giving full effect to such disclaimers," to the provision in Probate Code section 190.6[5] reading: "In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest," and to the first clause of Probate Code section 190.9[6] reading: "Any interest created prior to the effective date of this chapter which has not been accepted may be disclaimed after the effective date of this chapter in the manner provided herein; . . ."

The quoted clause of section 190.9, however, is followed by a proviso reading: "[P]rovided, however, that no interest which has arisen prior to the effective date of this chapter *in any person other than the beneficiary,* shall be destroyed or diminished by any action of the disclaimant taken pursuant to this chapter." (Italics supplied.)

Appellant contends that the proviso in Probate Code section 190.9 was intended to protect creditors and bona fide purchasers of a beneficiary who might disclaim his interest but not the state's intervening right to inheritance taxes. We cannot agree. We find nothing in the language of

---

[5]Probate Code section 190.6 provides: "Unless otherwise provided in the will, inter vivos trust, exercise of the power of appointment, or other written instrument creating or finally determining an inte $_\iota$ st the interest disclaimed and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest disclaimed, shall descend, go, be distributed or continued to be held as if the beneficiary disclaiming had predeceased the person creating the interest. In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest."

[6]Probate Code section 190.9 provides: "Any interest created prior to the effective date of this chapter which has not been accepted, may be disclaimed after the effective date of this chapter in the manner provided herein; provided, however, that no interest which has arisen prior to the effective date of this chapter in any person other than the beneficiary, shall be destroyed or diminished by any action of the disclaimant taken pursuant to this chapter."

the proviso indicating that the state's interest was not to be preserved. ■ There is a general rule of statutory interpretation that, in the absence of a specific expression of legislative intent, statutory language should not be construed to apply to governmental bodies where such interpretation would result in the infringement of "sovereign governmental powers." (*Estate of Miller,* 5 Cal.2d 588, 597 [55 P.2d 491]; *Bayshore Sanitary Dist.* v. *San Mateo,* 48 Cal.App.2d 337, 339 [119 P.2d 752], and cases there cited.) "But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' " (*City of Los Angeles* v. *City of San Fernando,* 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250], quoting *Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399, 402 [132 P.2d 804].) Pursuant to the foregoing principle, the word "person" in a statute has been held to include the state and lesser governmental entities. (*City of Los Angeles* v. *City of San Fernando, supra,* 14 Cal.3d 199, 276-277; *Flournoy* v. *State of California,* 57 Cal.2d 497, 498-499 [20 Cal.Rptr. 627, 370 P.2d 331]; *Hoyt* v. *Board of Civil Service Commrs., supra,* 21 Cal.2d 399, 402; *State of California* v. *Marin Mun. Water Dist.,* 17 Cal.2d 699, 704-705 [111 P.2d 651].) ■ The principle is applicable to the construction of the word "person" in the proviso of Probate Code section 190.9. Preservation of the state's vested right to inheritance taxes manifestly results in no infringement of "sovereign powers."

But there is an even more compelling reason why section 13409 cannot be given retroactive application to an interest transferred before its effective date. Our Supreme Court has repeatedly reaffirmed the principle first enunciated in *Estate of Stanford,* 126 Cal. 112, 118 [54 P. 259, 58 P. 462], that inheritance taxes are vested and determined in accordance with the law in effect on the date of transfer or death[7] and that rights so fixed cannot be surrendered, diminished or impaired by subsequent action of the Legislature since to do so would constitute a gift of public funds in violation of the state Constitution. (*Trippet* v. *State,* 149 Cal. 521, 528 [86 P. 1084]; *Estate of Martin,* 153 Cal. 225, 229 [94 P. 1053]; *Estate of Potter,* 188 Cal. 55, 66 [204 P. 826]; *Estate of Skinker,* 47

---

[7]Revenue and Taxation Code section 14102 provides: "Every tax imposed by this part is due and payable at the date of the transferor's death."

Cal.2d 290, 296 [303 P.2d 745, 62 A.L.R.2d 1137]. See *Allen* v. *Franchise Tax Board,* 39 Cal.2d 109, 113-114 [245 P.2d 297]; *People* v. *Schmidt,* 48 Cal.App.2d 255, 259 [119 P.2d 766]; *Estate of Lander,* 6 Cal.App. 744 [93 P. 202].)

In *Estate of Stanford, supra,* 126 Cal. 112, the probate court, over objections of the estate representatives, ordered the tax on collateral inheritances to be computed according to the provisions of the statute in effect on the date of Leland Stanford's death (1893). The estate representatives contended that the tax should be computed in accordance with an 1897 amendment which exempted resident nephews and nieces and certain classes of corporations, including Stanford University, and expressly provided that it was to be effective retroactively as of the date of the original act. In affirming the trial court's order, the Supreme Court held that the state's right to the inheritance tax vested as of the date of the decedent's death and that the attempted legislative surrender or divestment of that right was unconstitutional because (1) it constituted special legislation in violation of former section 25 of article IV of the state Constitution and (2) to give retroactive effect to the amendment would constitute a gift of public funds in violation of former article IV, section 31 of the Constitution[8] (now § 6, art. XVI).[9]

Appellant attempts to minimize the precedential value of *Stanford* by suggesting that the sole basis of the decision was that the amendment in question constituted special legislation. The proffered interpretation of the *Stanford* decision was rejected by the Supreme Court in *Trippet* v.

---

[8]Former article IV, section 31 of the state Constitution provided in pertinent part: "The Legislature shall have no power to give or to lend, or to authorize the giving, or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . ."

[9]Section 6 of article XVI of the state Constitution now provides in pertinent part: "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . ."

*State, supra,* 149 Cal. 521, at page 528, where the court declared that what it said in *Stanford* concerning the invalidity of the amendatory act as constituting a gift of public funds was not dictum but an independent ground of its decision.

Turning to cases of more recent vintage, in *Estate of Skinker, supra,* 47 Cal.2d 290, the court rejected the executrix' contention that in determining the amount of the inheritance tax the statutory commissions to be deducted should be based on the increased fees allowed by an amendment to the pertinent Probate Code section enacted shortly after decedent's death rather than the fees allowed by that section as it existed on the date of death. Citing *Stanford,* the court held that inheritance taxes are fixed and determined in accordance with the law in effect at the date of the decedent's death and that the Legislature could not by subsequent action limit the tax or in any manner surrender or impair the rights that have been so fixed; that where a tax has become due, a subsequent act of the Legislature "reducing the tax by reason of a change in the exemptions, tax rates, or for that matter *in any way* is held to be a gift of state monies and is prohibited by article IV, section 31, of the California Constitution." (47 Cal.2d at p. 296; italics supplied.)

In *Texas Co.* v. *County of Los Angeles,* 52 Cal.2d 55, 65-66 [338 P.2d 440], the court applied the constitutional principle enunciated in *Stanford* to ad valorem taxation. The court (per Traynor, J.) held that a section added to the Revenue and Taxation Code permitting deduction of the present worth of future rentals in the valuation of possessory interests could not, even assuming that it was otherwise constitutional, be retroactively applied to the valuation of such interest where the taxes became due before the section became effective. To give the section retrospective effect, said the court, would constitute an "unconstitutional gift of public funds." As authority for that proposition the court cited the inheritance tax cases cited earlier in this opinion, including *Estate of Stanford, supra,* 126 Cal. 112, and *Estate of Skinker, supra,* 47 Cal.2d 290.[10]

Thus section 13409 cannot be construed to apply retroactively to disclaimers of interests transferred before the effective date of the section

---

[10]Although the constitutional prohibition against gifts of public funds does not proscribe expenditure of public funds for a public purpose (see 5 Witkin, Summary of Cal. Law, Taxation, § 17, pp. 4001-4003, and cases there cited), appellant does not suggest that retrospective application of section 13409 comes within the public purpose exception. (See Note, 5 Stan.L.Rev. 156, 157-158.)

even if the Legislature had so intended. We assume, however, that the Legislature was aware of the long line of Supreme Court decisions to which we have alluded and did not intend the new section to be applied retroactively. (See *Buckley* v. *Chadwick,* 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242]; *Tillie Lewis Foods, Inc.* v. *City of Pittsburg,* 52 Cal.App.3d 983, 1005 [124 Cal.Rptr. 698].)

Since the foregoing discussion is dispositive of this appeal, we need not discuss the validity of the ground on which the trial court rested its decision.[11] ■ If a trial court's decision is right upon any theory of the law applicable to the case, "it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 329-330 [48 P. 117].)

The order is affirmed.

Kaufman, J., and McDaniel, J., concurred.

A petition for a rehearing was denied May 13, 1976, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied July 1, 1976.

---

[11]Our failure to discuss the ground upon which the trial court rested its decision is not to be construed as an expression of opinion one way or the other as to its validity.