[Civ. No. 21536. Fourth Dist., Div. Two. June 27, 1980.]

CALIFORNIA COMPUTER PRODUCTS, INC.,
Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Magasinn & Brickman, Magasinn & Berger, Arnold W. Magasinn and Henry S. Stone for Plaintiff and Appellant.

Adrian Kuyper, County Counsel, and Laurence M. Watson, Deputy County Counsel, for Defendants and Respondents.

OPINION

TAMURA, Acting P. J.—Plaintiff appeals from an adverse judgment in its action for partial refund of ad valorem taxes on its business inventories which were assessed on the 1975-1976 tax roll as escaped

property for the fiscal years 1972-1973 and 1973-1974. Plaintiff's refund action is predicated solely on the claim that the assessor erroneously failed to apply to the assessment the 1974 amendment to Revenue and Taxation Code section 219 which extended the business inventories exemption to escaped assessments meeting the conditions specified by the amendment.[1]

The pertinent facts are not in dispute. For each of the fiscal years 1972-1973 and 1973-1974, plaintiff filed a business property statement with the county assessor showing inventory costs as of the respective tax lien date and the costs so reported were used as the basis for the business inventory assessment for each of those years. In late 1973, the assessor commenced an audit of plaintiff's books and records pursuant to section 469.[2] The audit disclosed that plaintiff's 1972 and 1973 property statements failed to reflect accurately the cost of the business inventories and that such failure resulted in an underassessment for each of those years. Accordingly in June 1975, the assessor entered on the 1975-1976 tax roll escaped business inventory assessments for the fiscal years 1972-1973 and 1973-1974. The assessments were made without any allowance for the business inventories exemption provided for in section 219.

---

[1]All section references are to the Revenue and Taxation Code unless otherwise indicated.

As amended in 1974, section 219 provides in pertinent part: "Business inventories shall be assessed for taxation at the same ratio of assessed to full cash value as the ratio specified in Section 401. After such property has been so assessed, 30 percent of the assessed value of such property shall be exempt from taxation through the 1972-1973 fiscal year, and such exemption shall be indicated on the assessment roll. For the 1973-1974 fiscal year, 45 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. For 1974-1975 fiscal year and fiscal years thereafter, 50 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. The county assessor shall notify the auditor of the total assessed value of the exempt property within each city, district and revenue district wholly or partially within the county. The exemption provided for in this section shall not apply to business inventories assessed as escaped property under the provisions of Sections 531.3, 531.4 or 531.5 where (1) the omission is willful or fraudulent, (2) the failure to report the property accurately is willful or fraudulent, or (3) the exemption was incorrectly allowed because of erroneous or incorrect information submitted by the taxpayer or his agent with knowledge that such information was erroneous. The board shall prescribe all procedures and forms required to carry this exemption into effect and to insure accurate data for reimbursement calculations."

[2]Section 469 provides in relevant part: "In any case in which locally assessable business tangible personal property owned, claimed, possessed or controlled by a taxpayer engaged in a profession, trade, or business has a full value of one hundred thousand dollars ($100,000) or more, the assessor shall audit the books and records of such pro-

Plaintiff took a timely appeal to an assessment appeals board on issues of valuation and exemption. The appeals board reduced the assessed value but declined to rule on the exemption claim on the ground it lacked jurisdiction to resolve the issue. Plaintiff paid the taxes under protest and brought the instant action. The trial court granted the county's motion for summary judgment and plaintiff appeals from the ensuing judgment dismissing its action.

I

The controversy centers on the business inventories exemption provided by section 219. Legislation defining the term "business inventories" (§ 129) and granting such property partial exemption (§ 219) was first enacted in 1968. (Stats. 1969, First Ex. Sess. 1968, ch. 1, pp. 7-8.) Until the 1974 amendment to section 219, however, the exemption was specifically made inapplicable to business inventories assessed as escaped property. As enacted in 1972, section 219 provided that "30 percent of the assessed value of such property shall be exempt, from taxation through the 1972-1973 fiscal year, and such exemption shall be indicated on the assessment roll. For the 1973-1974 fiscal year, 45 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. For 1974-1975 fiscal year and fiscal years thereafter, 50 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. . . . *The exemption provided for in this section shall not apply to business inventories assessed as escaped property under the provisions of Sections 531.3, 531.4 or 531.5.*" (Stats. 1972, ch. 1406, § 14.5, pp. 2959-2960, urgency eff. Dec. 26, 1972; italics added.)

In 1974, section 219 was amended by adding a clause to the provision quoted above so that it read: "The exemption provided for in this section shall not apply to business inventories assessed as escaped property under the provisions of Sections 531.3, 531.4 or 531.5 *where (1) the omission is willful or fraudulent, (2) the failure to report the property accurately is willful or fraudulent, or (3) the exemption was incorrectly allowed because of erroneous or incorrect information submitted by the*

---

fession, trade, or business at least once each four years. If the board determines the value of property pursuant to Chapter 2 (commencing with Section 1815) of Part 3 of this division, such determination may be deemed an audit by the assessor for the purposes of this section."

*taxpayer or his agent with knowledge that such information was erroneous.*" (Italics added, Stats. 1974, ch. 1441, p. 3149, eff. Jan. 1, 1975.) Section 2 of the amending act provided: "The provisions of this act shall apply to the 1975-76 fiscal year and fiscal years thereafter."

The county does not contend that plaintiff's failure to report accurately the costs of its business inventories was either willful or fraudulent. Nor does plaintiff contest the legality of the escaped assessment other than as it relates to the availability of the exemption. Thus the resolution of this appeal turns on the effect to be given the 1974 amendment to section 219.

Plaintiff contends that section 2 of the amendatory action signifies a legislative intention to make the amendment applicable to escaped assessments entered on the 1975-1976 tax roll and the rolls of ensuing fiscal years irrespective of the year in which the escape occurred. The county, on the other hand, contends that the extent of the exemption must be determined in accordance with the law in effect on the lien date of the years in which the escape occurred. For reasons expressed below, we have concluded that the county's position is correct and that the judgment should be affirmed.

## II

■ It is a settled principle of the law of ad valorem taxation that the taxing agency's right to the taxes becomes fixed on the lien date of the fiscal year to which they relate. (*Couts* v. *Cornell* (1905) 147 Cal. 560, 564 [82 P. 194]; *San Diego* v. *Riverside* (1899) 125 Cal. 495, 500 [58 P. 81]; *City of Long Beach* v. *Aistrup* (1958) 164 Cal.App.2d 41, 51 [330 P.2d 282]; *Doctors Hospital* v. *County of Santa Clara* (1957) 150 Cal.App.2d 53, 56 [309 P.2d 501]; *City of Santa Monica* v. *Los Angeles Co.* (1911) 15 Cal.App. 710, 712-713 [115 P. 945].) The principle applies to unsecured as well as secured taxes. (See *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55, 66 [338 P.2d 440]; *Weber* v. *County of Santa Barbara* (1940) 15 Cal.2d 82, 85-87 [98 P.2d 492].) "Taxes on unsecured property are due on the lien date." (§ 2901.[3]) The subsequent assessment and levy are necessary in order to fix the amount of the tax but they do not result in the creation of a new obligation; they are simply administrative steps necessary to the enforcement of the

---

[3]The lien date is "the first day of March preceding the fiscal year for which the taxes are levied." (§ 2192.)

right which accrued on the lien date. (*Couts* v. *Cornell, supra,* 147 Cal. 560, 564; *San Diego* v. *Riverside, supra,* 125 Cal. 495, 500; *City of Long Beach* v. *Aistrup, supra,* 164 Cal.App.2d 41, 51.) When the amount is ascertained, it relates back to the time the lien became fixed.

It is an equally well settled principle of the law of taxation that the tax must be determined in accordance with the law in effect when the right to the tax vested. (*Texas Co.* v. *County of Los Angeles, supra,* 52 Cal.2d 55, 66; *Estate of Skinker* (1956) 47 Cal.2d 290, 296 [303 P.2d 745, 62 A.L.R.2d 1137]; *Estate of Potter* (1922) 188 Cal. 55, 66 [204 P. 826]; *Estate of Martin* (1908) 153 Cal. 225, 229 [94 P. 1053]; *Trippet* v. *State* (1906) 149 Cal. 521, 528 [86 P. 1084]; *Estate of Cooke* (1976) 57 Cal.App.3d 595, 602-603 [129 Cal.Rptr. 354]; *Doctors Hospital* v. *County of Santa Clara, supra,* 150 Cal.App.2d 53, 55.)

■ In the case at bench, the right to recover taxes on business inventories escaping assessment as a result of inaccuracies in the taxpayer's property statement accrued on the lien date of the fiscal year in which the escape occurred and the law as it then existed must govern the assessment. The statutes governing escape assessments are in harmony with the foregoing principle. Escaped property must be assessed at its value as of the lien date of the year of the escape and the levy must be at the tax rate for the fiscal year in which the property escaped assessment. (§§ 531-534.) Where the escape was occasioned by the taxpayer's failure to submit an accurate property statement, the statutes require payment of interest from the date the taxes would have been delinquent if they had been timely assessed. (§§ 506, 531.3, 531.4.) The code provides that escaped assessments "shall be entered on the roll prepared or being prepared in the assessment year when [they are] so discovered" and that if this is not the roll for the assessment year in which the escape occurred, the entry must contain the following information: "'Escaped assessment for year 19— pursuant to Sections —— —— of the Revenue and Taxation Code.'" (§ 533.[4]) The statutory scheme for escaped assessments thus embodies the principle that the right to the taxes on escaped property accrues on the lien date, not on the date of entry on the tax roll.

---

[4]Section 533 provides in pertinent part: "Assessments made pursuant to Article 3 (commencing with Section 501) of this chapter or pursuant to this article shall be entered on the roll prepared or being prepared in the assessment year when it is so discovered and, if this is not the roll for the assessment year in which it escaped assessment, the entry shall be followed with 'Escaped assessment for year 19— pursuant to Sections —————— of the Revenue and Taxation Code.'"

The term "assessment year" is defined as "the period beginning with a lien date and

The fact that the taxes on escaped property cannot be collected until the escape has been discovered and an assessment and levy has been made is not inconsistent with the principle that the right vests as of the lien date of the year of the escape. As the Supreme Court stated with reference to inheritance taxes: "There is no legal inconsistency in the idea of a right being vested, although the possession may be postponed or contingent upon the performance of certain acts." (*Trippet* v. *State, supra,* 149 Cal. 521, 529.) In the case at bench, the right which vested in the taxing agency on the lien date was the right to the taxes on plaintiff's business inventories which perforce included the right to levy an escaped assessment on any business inventories escaping assessment as a result of the taxpayer's subsequent filing of an inaccurate business property statement.[5]

Our high court's decision in *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942 [106 Cal.Rptr. 643, 506 P.2d 1019], is in accord with our conclusion that the exemption law in force at the time of the escape should govern. In *Bauer-Schweitzer,* the Assessor of the City and County of San Francisco had over a period of several years applied a 50 percent ratio in the assessment of business inventories except as to a small percentage of firms, including plaintiff, for which a lesser ratio was used. Pursuant to a writ of mandate in a taxpayer's action, the assessor rendered escaped assessments against plaintiff on March 28, 1967, for the years 1964, 1965 and 1966 and entered escaped assessments on the 1966 tax roll. During the years in which plaintiff's inventories were underassessed, section 401 required assessment of all property at "full cash value." In 1966, the Legislature amended section 401 by providing for an assessment ratio of less than full cash value for lien dates from and after the fiscal year 1967-1968. (Stats. 1966, First Ex. Sess., ch. 147, § 34, p. 658, eff. Oct. 6, 1966.) The court held that the 1966 amendment to section 401 was inapplicable, stating: "But the escaped assessments here involved pertain to the years 1964, 1965, 1966, as a result of which section 401, as it was in effect during such years, applies." (8 Cal.3d 942, 946.) While the escaped assessments in *Bauer-Schweitzer* were entered on the 1966 tax roll al-

---

ending immediately prior to the succeeding lien date for taxes levied by the same agency." (§ 118.)

[5]The business property statement is not required to be filed until the last Friday in May or such earlier date as the assessor may designate but such date cannot be earlier than April 1. (§ 441.)

though they were made after the lien date for fiscal year 1967-1968, the court's decision was not based on the fact that the assessments were entered on the prior fiscal year's tax roll.[6] All of which demonstrates the irrelevance of the roll on which the escaped assessment is entered insofar as the applicable law governing the assessment is concerned.

█ Plaintiff contends that section 2 of the 1974 amendatory act manifests a clear legislative intention that the expanded business inventories exemption should be applied to escaped assessments meeting the specified conditions which are entered on the 1975-1976 tax roll and on tax rolls in ensuing years irrespective of the year of the escape. We do not so read the section. Although the language is not free of ambiguity, we believe that it indicates that the Legislature intended the expanded exemption to apply only to business inventories escaping assessment in fiscal year 1975-1976 and thereafter. Indeed, any other interpretation would present a serious constitutional problem. It is an established principle of statutory construction that when two alternative interpretations are suggested, one of which would be constitutional and the other unconstitutional, the courts should choose that construction which will uphold the validity of the statute. (*San Francisco Unified School Dist. v. Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *City of Los Angeles* v. *Belridge Oil Co.* (1957) 48 Cal.2d 320, 324 [309 P.2d 417]; *Estate of Skinker, supra,* 47 Cal.2d 290, 297; *Kortum* v. *Alkire* (1977) 69 Cal.App.3d 325, 333 [138 Cal.Rptr. 26].) The interpretation advocated by plaintiff would authorize a gift of public funds in violation of article XVI, section 6 of the California Constitution. Where the taxing agency's right to a tax becomes vested, any subsequent legislation reducing the tax by enlarging an exemption, reducing the tax rate, or in any other manner impairing or limiting the right theretofore fixed would constitute a gift of public funds in violation of the state Constitution. (*Texas Co.* v. *County of Los Angeles, supra,* 52 Cal.2d 55, 66; *Estate of Skinker, supra,* 47 Cal.2d 290, 296; *Estate of Cooke, supra,* 57 Cal.App.3d 595, 603.) Although the furtherance of a public purpose may provide a sufficient consideration for a tax remission (see *Community Television of So. Cal.* v. *County of Los Angeles*

---

[6]Section 533 provides that the assessment "shall be entered on the roll prepared or being prepared in the assessment year when it is so discovered...." It thus appears that the tax roll on which the escaped assessment should be entered is the tax roll of the year in which the escape was discovered and not the roll of the assessment year in which the escaped assessment is made. This may explain why in *Bauer-Schweitzer* the escaped assessment was entered on the 1966-1967 roll instead of the 1967-1968 roll.

(1975) 44 Cal.App.3d 990, 997-998 [119 Cal.Rptr. 276]), in enacting the 1974 amendment to section 219, the Legislature made no attempt to declare a public purpose to be served by applying the expanded exemption retroactively to property escaping assessments in prior fiscal years. The failure to make such a declaration reinforces our conclusion that the Legislature did not intend a retrospective application of the 1974 amendment.

Finally, the construction urged by plaintiff would conflict with the state constitutional requirement of uniformity in the assessment of properties. ■ The assessor's duty to assess escaped property upon discovery is one which is imposed upon him not only by statute but by the self-executing provisions of the California Constitution requiring uniformity of assessments.[7] (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d 942, 946; *Hewlett-Packard Co.* v. *County of Santa Clara* (1975) 50 Cal.App.3d 74, 82 [123 Cal. Rptr. 195]; *Ex-Cell-O Corp.* v. *County of Alameda* (1973) 32 Cal. App.3d 135, 139-140 [107 Cal.Rptr. 839].) Plaintiff's interpretation of the 1974 amendment would result in unequal treatment of taxpayers whose business inventories escaped assessment in fiscal years 1972-1973 and 1973-1974 as a result of innocent misreporting of inventory costs. If the escape were discovered in time for the assessment to be entered on the 1973-1974 or 1974-1975 tax roll, the assessments would have to be made without regard to the exemption; if the escape were either not discovered in time or, because of the complexity of the audit, the assessment could not be completed in time for entry on an earlier roll so that it had to be entered on the 1975-1976 roll, the assessor would have had to allow for the exemption in making the assessment. This would violate the uniformity of assessments required by the Constitution. Properties escaping assessment in a particular tax year should receive uniform treatment irrespective of the date when the escape is discovered or the

---

[7]The constitutional provision requiring uniformity of assessments was formerly contained in article XI, section 12, which provided in part: "All property subject to taxation shall be assessed for taxation at its full cash value." The requirement is now contained in article XIII, section 1, which provides: "Unless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value.

"(b) All property so assessed shall be taxed in proportion to its full value."

tax roll on which the escaped assessment is entered. In a declaration filed in support of the county's motion for summary judgment, a representative of the assessor's office states: "[I]t was and is the policy of the Assessor to disallow the Business Inventory Exemption to any business inventories which escaped assessment in any fiscal year prior to the 1975-76 fiscal year and which were subsequently enrolled pursuant to Revenue and Taxation Code Sections 531.3, 531.4 and/or 531.5. This policy has been applied to all such escape assessments relating to fiscal years prior to 1975-76 regardless of when the escape assessment was enrolled." The policy pursued by the assessor comports with constitutional requirements and accords with our interpretation of the effect to be given the 1974 amendment to section 219.[8]

The judgment is affirmed.

Morris, J., concurred.

**KAUFMAN, J.**—I dissent. Unhappily the majority, apparently misconceiving the issue, have directed their attention for the most part to legal propositions that are not in question and which throw little light on the real question presented by the case, the proper interpretation of the uncodified section 2 in the 1974 amendment to Revenue and Taxation Code section 219. (All statutory references will be to the Rev. & Tax. Code unless otherwise specifically indicated.)

The majority's major premises, set forth in division II, are: (1) that the right to ad valorem taxes becomes fixed on the lien date of the fiscal year to which they relate (*ante*, p. 736), and (2) that the tax must be determined in accordance with the law in effect when the right

---

[8]We note that the Attorney General in a letter opinion dated December 11, 1974, to the State Director of Finance reaches the same conclusion we have reached on the effect to be given the 1974 amendment to section 219. The Director of Finance requested the opinion in connection with the preparation of the 1975-1976 budget for subventions to local government for revenue loss resulting from the business inventories exemption. The Attorney General concluded that the amendment had no application to business inventories which escaped taxation in prior years and that the extension of the exemption would first become applicable to property escaping assessment on the March 1, 1975, lien date. While the opinions of the Attorney General are not controlling, they have been accorded great respect by the courts. (*Smith* v. *Anderson* (1967) 67 Cal.2d 635, 641, fn. 5 [63 Cal.Rptr. 391, 433 P.2d 183]; *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 676 [56 Cal.Rptr. 265, 423 P.2d 193]; *Wanee* v. *Board of Directors* (1976) 56 Cal.App.3d 644, 648-649 [128 Cal.Rptr. 526].) Although the letter states that it is an informal opinion, it contains a complete analysis of the problem and was manifestly intended to be acted upon by the Director of Finance. As a contemporaneous interpretation of the 1974 amendment, the opinion is entitled to great respect.

to the tax vested (*ante*, p. 737). Neither party in this case disputes those well-settled propositions. Indeed, both parties agree that it is the version of section 219 as amended in 1974 that is applicable to the escape assessments here involved because they were enrolled in fiscal year 1975-1976. (See *Beckman Instruments, Inc.* v. *County of Orange* (1975) 53 Cal.App.3d 767, 778, fn. 8 [125 Cal.Rptr. 844].)

The uncodified section 2 in the 1974 amendment to section 219 reads: "The provisions of this act shall apply to the 1975-1976 fiscal year and fiscal years thereafter." (Stats. 1974, ch. 1441, § 2.) The dispute between the parties is whether the quoted language was intended by the Legislature to signify *escape assessments made* in the 1975-1976 fiscal year and fiscal years thereafter or only to *escapes that occurred* in the 1975-1976 fiscal year or thereafter. Plaintiff taxpayer contends that it was the Legislature's intent that the 1974 amendment apply to escape assessments made in fiscal year 1975-1976 or thereafter, regardless of the year in which the escape occurred. County maintains that the amendment was intended to apply only to business inventories that escaped assessment in fiscal year 1975-1976 or fiscal years thereafter. Taxpayer is correct.

It is a cardinal principle of statutory construction that every word, phrase and provision of a statute is to be given meaning and that a statute will not be interpreted in such a way as to deny effect to portions of the statutory language. (*J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36 [160 Cal.Rptr. 710, 603 P.2d 1306]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5]; *Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 381 [137 Cal.Rptr. 332].) The interpretation of section 219 as amended in 1974 suggested by county and adopted by the majority completely nullifies a substantial portion of the statutory language.

As amended in 1974, section 219 provided a 30 percent exemption from taxation through the 1972-1973 fiscal year, a 45 percent exemption for the 1973-1974 fiscal year, and a 50 percent exemption for the 1974-1975 fiscal year and fiscal years thereafter.[1] Interpreting the stat-

---

[1]The 1974 act amending section 219 read in pertinent part: "Section 1. Section 219 of the Revenue and Taxation Code is amended to read:

"219. Business inventories shall be assessed for taxation at the same ratio of assessed to full cash value as the ratio specified in Section 401. After such property has been so assessed, 30 percent of the assessed value of such property shall be exempt from taxation through the 1972-1973 fiscal year, and such exemption shall be indicated on the

ute to extend the exemption in the case of "innocent" escape assessments only to those escapes occurring in the 1975-1976 fiscal year and fiscal years thereafter, renders meaningless the exemptions provided by the statute for the 1972-1973 and the 1973-1974 fiscal years. When the amendment was enacted in 1974 the 1972-1973 and 1973-1974 fiscal years had long since passed as had the fiscal years prior to 1972-1973. It was therefore impossible in 1974 that any further current assessments be made for those years to which the exemption could apply. So the statutory provisions for exemptions for those years could be meaningful only by application to escape assessments. Since those provisions could have meaning only in connection with escape assessments and since the Legislature failed to delete those provisions in the 1974 amendment, the conclusion is inescapable that the Legislature intended those provisions to apply to escape assessments made in fiscal year 1975-1976 or thereafter even though the escapes occurred in fiscal years 1972-1973 or 1973-1974. If, as county contends and the majority say, the statute as amended was meant to apply only to property that escaped assessment in fiscal year 1975-1976 or fiscal years thereafter, no taxpayer could possibly claim the exemptions provided by the statute for fiscal years 1973-1974, 1972-1973, and fiscal years prior thereto, and the statutory provisions for exemptions for those fiscal years would be rendered utterly meaningless.

What the Legislature was attempting to accomplish by the 1974 amendment to section 219 was to place taxpayers who "innocently" filed inaccurate business property statements resulting in subsequent escape assessments in precisely the same position as taxpayers who filed accurate business property statements. A taxpayer who filed an accurate statement for fiscal year 1972-1973 would have obtained a 30

---

assessment roll. For the 1973-1974 fiscal year, 45 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. For 1974-1975 fiscal year and fiscal years thereafter, 50 percent of the assessed value of such property shall be exempt from taxation, and such exemption shall be indicated on the assessment roll. The county assessor shall notify the auditor of the total assessed value of the exempt property within each city, district and revenue district wholly or partially within the county. The exemption provided for in this section shall not apply to business inventories assessed as escaped property under the provisions of Sections 531.3, 531.4 or 531.5 where (1) the omission is willful or fraudulent, (2) the failure to report the property accurately is willful or fraudulent, or (3) the exemption was incorrectly allowed because of erroneous or incorrect information submitted by the taxpayer or his agent with knowledge that such information was erroneous. . . .

"`. . . . . . . . . . . . . . .`

"(2) The provisions of this act shall apply to the 1975-76 fiscal year and fiscal years thereafter." (Stats. 1974, ch. 1441, p. 3149.)

percent exemption. The taxpayer who "innocently" filed an inaccurate business property statement for that fiscal year resulting in an escape assessment in fiscal year 1975-1976 was to be placed in the same position—that is, he would receive the 30 percent exemption provided by the statute with respect to fiscal year 1972-1973 so that the amount of his tax would be the same as it would have been if he had accurately reported except that, of course, he would be required to pay interest on the amount owed under the escape assessment (see § 531.5).

Taxpayer's interpretation of section 219 as amended in 1974 is manifestly correct. It gives meaning to all of the provisions in the statute, and it accords with the statutory purpose.

The only other substantial reason given by the majority for the result they reach is that the construction suggested by the taxpayer might render the statute vulnerable to constitutional attack as bestowing a gift of public funds in violation of article XVI, section 6 of the California Constitution (*ante*, p. 739), or as constituting an unequal assessment of property in violation of article XIII, section 1 of the California Constitution. Neither of these reasons is sound; there is no substantial possibility that section 219 would be rendered unconstitutional on either of these bases.

The majority are correct, of course, that the right to the tax becomes vested on the lien date and that the amount of the tax subsequently fixed relates back to the lien date. But I cannot ascribe to the proposition that fixing the amount of the tax in 1975-1976 as the same amount (plus interest) the tax would have been had it been properly assessed in 1972-1973 or 1973-1974 somehow constitutes a gift of public funds. The amount of the tax is a function of its assessed value, the tax rate, and the allowable exemption. The amount of the tax is not ascertained until the applicability of the exemption is ascertained. It is no answer to say that the amount when fixed was vested from the lien date when the question being asked is what is the amount.

In respect to the problem of the prohibition against gifts of public funds, it is important to ask just what it was that became county's vested right on the lien dates. Manifestly, what became vested was the right to the proper tax on taxpayer's business inventories in 1972-1973 and 1973-1974. But the proper tax on those inventories allowed for a 30 percent exemption with respect to 1972-1973 and a 45 percent exemp-

tion with respect to 1973-1974. That is all that taxpayer is seeking now. It does not seek the 50 percent exemption statutorily provided with respect to fiscal years 1974-1975 and thereafter; it seeks only the 30 percent exemption with respect to fiscal year 1972-1973 and the 45 percent exemption with respect to fiscal year 1973-1974. If section 219 is interpreted as affording to taxpayer the statutory exemptions provided for those fiscal years, county is out nothing that it was entitled to; there is no gift of public funds; county will receive precisely what it would have received had the property been properly assessed in fiscal years 1972-1973 and 1973-1974 together with interest for the delay in payment.

The nonuniform assessment argument is likewise falacious. In the first place, it is quite possible that the allowance of differential exemptions on a rational basis would not render otherwise uniform *assessments* nonuniform. More importantly, the taxpayer whose escaped property was assessed in a fiscal year prior to 1975-1976 is not in the same position as the taxpayer whose escaped property was assessed in 1975-1976, and the difference between two such taxpayers is undoubtedly sufficient to warrant different treatment. When section 219 was amended in 1974, escape assessments previously made had been enrolled, and, in many cases, no doubt, paid. Any attempt to extend the applicability of the exemption provisions to escape assessments already enrolled and perhaps paid would, indeed, in all probability constitute a gift of public funds contrary to the constitutional prohibition. Further, it would impose upon taxing agencies a very substantial administrative burden. Not so with respect to escape assessments made in fiscal years 1975-1976 and thereafter.

Finally, although not addressed by the majority, county contends that the interpretation of the statute it advances is supported by a contemporaneous construction of the statute by the State Board of Equalization in its rule 133 filed February 18, 1975, shortly after enactment of the 1974 amendment to section 219. It is true that contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight, but final responsibility for the interpretation of the statute rests with the court. (*Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 67 [141 Cal.Rptr. 146, 569 P.2d 740]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal. Rptr. 689, 433 P.2d 697]; *Lake Forest Community Assn.* v. *County of Orange* (1978) 86 Cal.App.3d 394, 407 [150 Cal.Rptr. 286].) In any

event, as I read the amended rule, it supports the construction advanced by taxpayer, not that urged by county.

The amended rule provides in pertinent part: "(b) Exclusions. Property eligible for the 'business inventories' exemption does *not* include:

". . . . . . . . . . . . . . .

"(8) Property which had escaped assessment as of the filing of the roll pursuant to section 616 of the Revenue and Taxation Code, but has subsequently been assessed under the provisions of sections 531.3, 531.4 or 531.5 of the Revenue and Taxation Code, *except that such assessments for the tax year 1975-1976 and thereafter shall result in loss of exemption only when the assessment includes the penalty provided by section 504* of the Revenue and Taxation Code." (Cal. Admin. Code, tit. 18, § 133; italics added.)

It is clear that the words "such assessments" refer to any escape assessment that "has subsequently been assessed under the provisions of sections 531.3, 531.4 or 531.5 of the Revenue and Taxation Code." The only question is whether the expression "such assessments *for* the tax year 1975-1976 and thereafter" means all escape assessments made in tax year 1975-1976 and thereafter or escape assessments made only with respect to property which escaped taxation in tax year 1975-1976 or thereafter. In my view, giving the words used their ordinary meaning, "such assessments for the tax year 1975-1976 and thereafter" refers to all escape assessments made in those years regardless of the year in which the escape occurred. However, county argues that the word "for" should be given the meaning "with respect to" so that the words "such assessments for the tax year 1975-1976 and thereafter" would mean escape assessments with respect to property which escaped in tax years 1975-1976 and thereafter. I believe not.

The word "for" may, of course, mean "with respect to." However, after reading numerous code sections relating to escaped property and escape assessments, I am persuaded that if the Legislature had intended the language "such assessments for the tax year 1975-1976 and thereafter" to refer only to property that escaped assessment in the tax year 1975-1976 and thereafter, it would have used that precise language. (Cf. §§ 531, 532, 532.3, and 533.)

The most that can be said for this contention of county is that the administrative interpretation of the statute is itself unclear and cannot possibly override the result uniformly indicated by all of the other interpretative aids and rules of construction discussed.

I would reverse the judgment with directions to the trial court to enter judgment awarding taxpayer a partial refund of the taxes paid by it under protest with respect to its business inventories for the 1972-1973 and 1973-1974 fiscal years in the amount of its overpayment.[2]

Appellant's petition for a hearing by the Supreme Court was denied September 3, 1980.

---

[2] In a footnote in its brief on appeal county informs us that in the event we should determine that taxpayer is entitled to the inventory exemption, its tax refund would be computed on 30 percent of the inventory assessed value fixed by the assessment appeals board for the year 1972-1973 and 45 percent of the inventory assessed value fixed by the assessment appeals board for the year 1973-1974 and that, further, the parties have agreed to cooperate in the preparation and submission to the trial court of a judgment reflecting the amount to be refunded.