[Nos. A021208, A027732. First Dist., Div. Four. Apr. 30, 1986.]

TRAILER TRAIN COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

566

568

570

572

**COUNSEL**

Weyman I. Lundquist, David H. Neeley, Patricia L. Shanks, Jonathan P. Hayden and Heller, Ehrman, White & McAuliffe for Plaintiff and Appellant.

Ephraim Margolin, Nicholas Arguimbau, Christina Hall, Karin Kramer and Kramer & Hall as Amici Curiae on behalf of Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Tyler, Edward P. Hollingshead and Robert D. Milam, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CHANNELL, J.**—Respondent State Board of Equalization (Board) annually assesses and levies a property tax on appellant Trailer Train Company's fleet of flatcars pursuant to the Private Railroad Car Tax Law (PRCTL). (Rev. & Tax. Code, § 11401.)[1] In these consolidated appeals, Trailer Train challenges adverse trial court rulings that upheld the Board's acts of levying an escape assessment for the 1976 tax year by disallowing a claim for functional obsolescence (case No. A021208) and refusing to use only the income capitalization method to value Trailer Train's fleet of flatcars for the tax years 1977 through 1980 (case No. A027732) under the PRCTL. (§ 11201 et seq.)

In its appeal of the 1976 escape assessment, Trailer Train contends that: (1) the Board had no authority to levy the escape assessment; (2) the Board abused its discretion when applying an assessment different from that used in the original assessment; (3) substantial evidence did not support the Board's findings; and (4) the trial court erred in granting the Board's motion for summary judgment. In its appeal of the Board's 1977-1980 assessments, Trailer Train contends that: (1) Board procedures violated due process; (2) it properly exhausted its administrative remedies before seeking judicial relief; and (3) the Board violated its own rules by using the cost method to assess Trailer Train's car. In both appeals, Trailer Train contends that its flatcars are exempt from taxation under the PRCTL and that the trial court should have exercised its independent judgment when reviewing the Board's findings. An amicus brief also supports Trailer Train's due process contentions. After considering each contention, we find them meritless and affirm the judgments.

### I. FACTS

A. *Escape Assessment for 1976*

Appellant Trailer Train is owned by railroad companies who lease its flatcars. ■ ■■■ In preparation for the 1976 tax year assessment,

---

[1]All statutory references are to the Revenue and Taxation Code, unless otherwise indicated.

Trailer Train submitted its annual report on its flatcars along with claims for both economic and functional obsolescence[2] to respondent Board. The Board staff and Trailer Train representatives discussed the obsolescence claims. After viewing a slide presentation, Board staff members agreed that some of Trailer Train's flatcars were becoming functionally obsolete because they were too short to accommodate the optimum number of industry-standard freight containers. The staff asked Trailer Train to provide objective data to support the amount of lost value it attributed to functional obsolescence, but Trailer Train did not do so. With reservations, the staff eventually accepted both the economic and functional obsolescence claims in the estimated amounts when levying the private car tax for the 1976 tax year. That tax was based on a value determined by using 80 percent of the cost method calculation and 20 percent of the income method calculation.

When considering Trailer Train's 1977 tax, Board supervisor Rudy Bischof reviewed the 1976 assessment. Bischof questioned the obsolescence claims included in the 1976 assessment. He noted that the fact that Trailer Train's fleet was used over 90 percent of the time did not tend to support its claim that 28 percent of the fleet was obsolete. The Board staff subsequently audited Trailer Train to again seek objective support for these claims. Again, Trailer Train did not provide any objective data to support its claim and the audit revealed no such information. Bischof determined that the claim for economic obsolescence included loss of value for all forms of obsolescence, including functional obsolescence. ■■■■ Acting on the staff's recommendation, the Board levied an escape assessment,[3] disallowing the claim for functional obsolescence. Trailer Train was assessed an additional $280,072 in back taxes. After Trailer Train's formal protest, the Board conducted hearings, during which Board members again asked Trailer Train to provide the objective data needed to support the functional obsolescence claim. When no data was supplied, the Board upheld the escape assessment.

Although the Board considered offsetting the escape assessment taxes due against an unrelated refund the Board owed Trailer Train, Trailer Train paid the tax under protest.[4] The company brought suit for refund of the escape assessment. The complaint cited three causes of action: (1) that Trailer Train's flatcars were exempt from the PRCTL; (2) that the escape

---

[2]Economic obsolescence is a loss in property value due to factors outside the property itself, such as political or social factors. Functional obsolescence is a loss in property value due to some problem inherent in the property itself.

[3]An escape assessment is a retroactive assessment of taxable property intended to correct omissions or errors in the original assessment.

[4]Also in 1976, Trailer Train disputed the Board's estimate of the number of taxable cars. As a result of an adjusted car count, the Board agreed to refund $234,133 to Trailer Train.

assessment was improper because it was based on a change of opinion by Board staff; and (3) that the escape assessment constituted a denial of due process. Trailer Train moved for summary judgment on the second cause of action. The Board countered by filing its own motion for summary judgment on all three causes of action. Trailer Train's response to the Board's motion did not discuss the due process cause of action. The trial court denied Trailer Train's motion for summary judgment and granted the Board's motion on all three causes of action. Trailer Train filed a timely appeal from the judgment entered in the 1976 escape assessment action.

## B. *Assessments for 1977-1980*

The second appeal, involving assessments for tax years 1977-1980, arises as a result of a continuing dispute between the parties about the proper method of valuing Trailer Train's fleet. �as a ▆ Simply put, Trailer Train would have the Board calculate value solely on the basis of the income capitalization method of valuation. (See Cal. Admin. Code, tit. 18, § 8.) Instead, the Board applies the replacement cost method of valuation (see Cal. Admin. Code, tit. 18, § 6), at one time in combination with the income approach and now as its exclusive method of valuation. The income capitalization method computes the value of a car on the basis of the income that a reasonable purchaser could earn during the future life of the car. The replacement cost method computes the value of a used car on the basis of the cost to replace it with a new car, allowing deductions for the car's depreciation in value resulting from its earlier use. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354]; see also Cal. Admin. Code, tit. 18, §§ 6, subd. (b), (e), 8, subds. (b), (c).)

In 1977, the Board staff calculated the fleet's value using 70 percent of the cost method calculation and 30 percent of the income method calculation. Challenging the assessment, Trailer Train urged the sole use of the income method, which would result in a lower value for each of its cars. However, the Board adopted the staff recommendation, finding that Trailer Train's unusually high cost of maintenance and repair made its income too low to justify using the income method.

In 1978, the staff valued the fleet using 669 percent of the cost method calculation and 338 percent of the income method calculation. Trailer Train again challenged the Board's valuation, contending that i·; rental rates were competitive with rates set by the Interstate Commerce Commission (ICC) for the lease of cars owned by railroad companies ("interchange rates"), that it earned a reasonable profit on its fleet, that its maintenance costs were reasonable, and that its fleet should be valued as a unit, rather than on a

per-car basis.[5] The Board found that Trailer Train's income method calculation did not comply with Board rules (see Cal. Admin. Code, tit. 18, § 8) and adopted its staff's recommendation.

The close relationship between Trailer Train and the owner-railroad companies had already caused the staff members to suspect that the fleet's actual income did not reflect its potential income. By this time, the Board discovered a resolution of Trailer Train's directors supporting the Board's conclusion that the rental income received for use of the fleet did not include a reasonable profit. Trailer Train's directors and major shareholders—those who set its rates—were also its major users—those who pay the rates. This evidence of the lack of an arm's distance relationship between Trailer Train and the railroads it served tended to support the conclusion that Trailer Train's actual income did not reflect the full income that the fleet was capable of earning.

In 1979 and 1980, the staff computed the value of the fleet entirely on the basis of the cost method. Trailer Train contested these valuations, contending that its fleet was exempt from the PRCTL and that the state was taxing its flatcars twice, once to owner Trailer Train and once to the user railroads.[6] Trailer Train again argued for exclusive use of the income method and contended that the Board staff had not complied with its rules. The Board still disagreed with Trailer Train and relied solely on the cost method when computing the value of the fleet.

Trailer Train filed suit for refund for each tax year between 1977 and 1980. Each suit made the same claims: that Trailer Train was exempt from the PRCTL; that only the income method of valuation should be applied; that Board findings were not supported by substantial evidence; that Board procedures did not comport with due process; and that the Board's action resulted in multiple taxation. The four cases were consolidated for a court trial, at which Trailer Train urged most of the same arguments presented to the Board during its administrative hearings. However, it also suggested a new theory—over Board objection—that ICC regulations limited its potential income from the fleet, making Board application of the cost method improper. (See Cal. Admin. Code, tit. 18, § 6, subd. (a).) The trial court allowed Trailer Train to present evidence not included in the administrative record on issues that were raised at the administrative level, again over Board objection. The trial court rendered judgment for the Board and issued

[5]Trailer Train did not pursue the unit value theory at trial.

[6]Trailer Train did not raise the multiple taxation issue in its brief and so has abandoned it on appeal. (See Connor v. Dart Transportation Service (1976) 65 Cal.App.3d 320, 323 [135 Cal.Rptr. 259].)

a detailed statement of decision. Trailer Train filed a timely notice of appeal from the judgment in the second action.

## II. EXEMPTION FROM PRCTL

In both actions, Trailer Train contends that its flatcars are not taxable pursuant to the PRCTL on several theories. ■ The question of whether flatcars are exempt from taxation under the PRCTL is a question of law. (See *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 681-682 [117 Cal.Rptr. 874]; see also *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247.)[7]

■ First, Trailer Train contends that its flatcars are not included within the statutory definition of "private railroad cars." (§ 11203, subds. (a), (b).)[8] Subdivision (a) of section 11203 provides that the term "private railroad car" "includes a passenger car, sleeping car, dining car, express car, refrigerator car, oil or tank car, horse or stock car, fruit car, or car designed for the carrying of a special commodity, operated upon the railroads in this state . . . ." Trailer Train contends that it is exempt from the PRCTL

---

[7]The Board contends that Trailer Train did not exhaust its administrative remedies on this issue in three of the five tax years involved in these appeals. Despite some older authority to the contrary (see *Security-First Nat. Bk.* v. *County of L.A.* (1950) 35 Cal.2d 319, 321 [217 P.2d 946], cert. den., 340 U.S. 891-892 [95 L.Ed. 646, 71 S.Ct. 207] [exhaustion not required when assessment null because property is tax exempt]), we seriously question whether Trailer Train has exhausted its administrative remedies in tax years 1976, 1977, and 1978. (See *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410] [exhaustion requirement recognizes expertise of administrative tribunal; even if no adequate remedy at administrative level, exhaustion promotes judicial efficiency by unearthing relevant evidence and providing record for court to review]; *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 317 [159 Cal.Rptr. 416] [exhaustion required even if resort to courts is inevitable]; *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392] [doctrine evolved for benefit of courts, not litigants].) Even so, the Board does not contend that Trailer Train did not exhaust its administrative remedies for the 1979 and 1980 tax years. Because we must determine whether Trailer Train's flatcars are exempt from the PRCTL for those two years and because we find in the Board's favor on the merits of this issue, we need not decide the exhaustion issue.

[8]In 1979, the Private Car Tax Law was amended to change references to "private cars" to "private railroad cars." (Stats. 1978, ch. 1209, pp. 3910-3913.) Although both parties refer only to the present version of the PRCTL, we must interpret the law in effect at the time when the taxes were due. (See *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55, 66 [338 P.2d 440]; *General Dynamics Corp.* v. *County of San Diego* (1980) 108 Cal.App.3d 132, 139 [166 Cal.Rptr. 310] [escape assessment levied according to law existing in fiscal year in which underassessment occurred]; *California Computer Products, Inc.* v. *County of Orange* (1980) 107 Cal.App.3d 731, 736-737 [166 Cal.Rptr. 48].) We consider the appeal of the 1976 escape assessment and the 1977 and 1978 assessments under former law and the appeal of the 1979 and 1980 assessments under present law. Because the differences between the two statutes do not have a substantive impact on these actions, we will use the terminology of present law for convenience.

because the term "flatcars" does not appear in this subdivision. However, this subdivision begins its listing with the term "includes," ordinarily a word of enlargement and not of limitation. ■ The statutory definition of a term as "including" listed items does not necessarily limit the original term to the listed inclusions. (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639 [268 P.2d 723], app. dism., 348 U.S. 859 [99 L.Ed. 677, 75 S.Ct. 87]; *Paramount Gen. Hosp.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501 [117 Cal.Rptr. 42].) ■ The fact that the term "flatcars" is not specifically listed in subdivision (a) of section 11203, a list that does not purport to be complete, does not establish that the Legislature intended to exclude flatcars from the PRCTL.

Trailer Train also argues that its flatcars are specifically exempted from the statutory definition of "private railroad cars." (§ 11203, subds. (c)(2), (3).) ■ Statutes granting exemption from taxation are strictly construed; the exemption will neither be enlarged nor extended beyond the plain meaning of the language used. (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045]; *Peninsula Covenant Church* v. *County of San Mateo* (1979) 94 Cal.App.3d 382, 392 [156 Cal.Rptr. 431]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 4, pp. 3990-3991.) ■ Subdivision (c)(2) of section 11203 provides that the term "private railroad car" "does not include: . . . [¶] (2) Freight train or passenger cars handled under mileage . . . contract arrangements *between railroad companies*." (Italics added.) Neither trial court was persuaded by Trailer Train's argument that its fleet comes within this exemption.

Trailer Train operates under a pooling agreement with a number of railroad companies. The agreement provides for rents based in part on mileage. Although it does not claim to be a railroad company, Trailer Train contends that because it is a party to a contractual arrangement between the railroads, it comes within the meaning of section 11203, subdivision (c)(2). At trial on the 1977-1980 tax assessment, it also argued that, as the corporate creation of a number of railroad companies, the ICC considers it to be an agent for those railroads. However, as the Board correctly notes, these contentions obscure the real question: whether the California Legislature intended to exempt nonrailroad companies from taxation. (*Toyota of Visalia, Inc.* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 322 [202 Cal.Rptr. 190] [legislative intent is the primary rule of statutory construction to which every other rule must yield]; *California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 691-692 [119 Cal.Rptr. 668].) Trailer Train did not present any evidence on this question at the proceedings below. On this basis, the summary judgment in the first action should have been granted as a matter of law. (See Code Civ. Proc.,

§ 437c, subd. (c); see also *C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 743 [135 Cal.Rptr. 483] [mere conclusions in moving papers are insufficient to raise triable issue of fact].) In the second action, the trial court finding that because "Trailer Train is not a railroad, the arrangements it makes with railroads . . . do not constitute arrangements between railroad companies" is also correct. Finally, the determination that Trailer Train is not a "railroad company" also disposes of its final suggestion that its cars are tax exempt as "part of the property of a railroad company operating in this state." (§ 11203, subd. (c)(3).)

The Board has been taxing Trailer Train's fleet under this law since the private car company began operations in 1955. ■ Under California law, interpretations of statutory provisions by state administrative agencies are entitled to great weight when construing such provisions; generally, courts will not depart from the agency's construction unless it is clearly erroneous or unauthorized. (*Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; *General Dynamics Corp.* v. *County of San Diego, supra,* 108 Cal.App.3d at p. 140.)

■ In 1965, a Senate Fact Finding Committee on Revenue and Taxation reviewed the Private Car Tax Law. At that time, it recognized that Trailer Train was being taxed according to the PRCTL. The report refers to the tax as one "imposed on railroad cars owned by private cars companies"; it does not limit the type of railroad cars to be included within the tax's purview. The Legislature amended this statute in 1972, 1974, and 1978. (Stats. 1972, ch. 9, § 1, p. 10; Stats. 1974, ch. 54, § 1, p. 117; Stats. 1978, ch. 1209, § 4, p. 3910.) We presume that the Legislature made these amendments with full knowledge of the Board's construction of the statute. The Legislature's failure to modify the statute to counteract the Board's interpretation is a factor that we consider when determining legislative intent. (*Coca-Cola Co.* v. *State Bd. of Equalization, supra,* 25 Cal.2d at p. 922; see *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 708-709 [166 Cal.Rptr. 331, 613 P.2d 579], app. dism., cert. den., 449 U.S. 1029 [66 L.Ed.2d 492, 101 S.Ct. 602].) Faced with these facts and presumptions and the lack of any evidence of legislative intent tending to support Trailer Train's contention, we conclude that the Legislature intended that flatcars be included within the scope of the PRCTL.

■ In the 1976 escape assessment action, the trial court properly entered summary judgment for the Board on the first cause of action because the PRCTL applies to flatcars.[9] In the 1977-1980 assessments action, the trial

[9]The minute order granting the Board's motion for summary judgment in the first action states that Trailer Train is subject to the PRCTL. If the trial court should not have reached

court also properly decided against Trailer Train on the merits of the exemption issue.

## III. Board's Authority to Levy Escape Assessment

 In the first action, the trial court denied Trailer Train's motion and granted the Board's motion for summary judgment on the second cause of action,[10] finding that the Board had both constitutional and statutory authority to levy an escape assessment, even if based solely on a matter of opinion. The trial court also found Trailer Train's contention that the escape assessment violated due process to be unsupported, noting that the taxpayer had sufficient opportunity to present the Board with evidence that would support its claim for functional obsolescence. On appeal, Trailer Train again contends that the Board had no statutory or constitutional authority to levy an escape assessment based on a subsequent appraiser's opinion on a judgmental factor—that the functional obsolescence claim originally allowed was unjustified.[11]

Both Constitution and statute *require* the Board to levy the escape assessment. The constitutional provision requiring a uniform assessment (Cal. Const., art. XIII, § 1) has been interpreted to compel an escape assessment, even in the absence of statutory authorization, if property is not taxed at its full value. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946-947 [106 Cal.Rptr. 643, 506 P.2d 1019]; *Hewlett-Packard Co.* v. *County of Santa Clara, supra,* 50 Cal.App.3d at pp. 81-82.) In fact, however, section 11315 specifically requires the Board to levy an escape assessment "[i]f *any property* required to be assessed for any year wholly escapes assessment or *escapes assessment in part* due to the board's underassessing the property because of failure of the taxpayer to report the property accurately . . . ." (Italics added.) As in *General*

---

this issue because, in fact, Trailer Train should have but did not exhaust its administrative remedies, summary judgment would have been required. (*Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878, 890-891 [220 Cal.Rptr. 684] [failure to exhaust administrative remedies as jurisdictional defect; grant of summary judgment mandated].)

[10]The fact that both parties moved for summary judgment on this issue does not conclusively establish the absence of a triable issue of fact; the trial court must independently determine the motions. (*Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 583-584 [118 Cal.Rptr. 818], overruled on another point in *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93, fn. 4 [130 Cal.Rptr. 321, 550 P.2d 593].)

[11]Trailer Train also contends that by allowing the Board to levy an escape assessment based on a changed opinion of valuation, the principle of finality of administrative decisions will be violated. The Legislature has chosen to allow the Board four years in which to levy an escape assessment (§ 11318). As such, this argument is more properly addressed to the Legislature. (See *Hewlett-Packard Co.* v. *County of Santa Clara* (1975) 50 Cal.App.3d 74, 82 [123 Cal.Rptr. 195].)

*Dynamics Corp.* v. *County of San Diego, supra,* 108 Cal.App.3d 132, relied on by the trial court, Trailer Train claimed unjustified reductions of assessed value. (*Id.,* at pp. 135-136.) Trailer Train did not provide objective data to support the amounts originally claimed for functional obsolescence, although given repeated opportunities to do so.

Trailer Train attempts to distinguish *General Dynamics* as a case in valuing "objective error" rather than a change of opinion, but we are not persuaded by its reasoning. For the same reasons that the assessor was required to levy an escape assessment in *General Dynamics,* the escape assessment pursuant to section 11315 was proper here. By characterizing the Board staff's action as "second guessing," Trailer Train obscures the flaw in its case: that it has not, and apparently cannot, provide objective data—"hard numbers"—to support the amount of its claim for functional obsolescence. When the Board previously accepted the functional obsolescence claim and reduced the assessed value of Trailer Train's fleet of flatcars accordingly on the basis of this uncorroborated claim, it undervalued the fleet. Once the Board discovered this undervaluation, it had a constitutional and statutory duty to levy an escape assessment. (*Hewlett-Packard Co.* v. *County of Santa Clara, supra,* 50 Cal.App.3d at pp. 80-82 [assessor required to levy escape assessment even if original assessor erred in judgment of value]; see Cal. Const., art. XIII, § 1; see also § 11315.) Faced with these facts, the trial court properly granted the Board's motion for summary judgment on the second cause of action. (See Code Civ. Proc., § 437c, subd. (c).)

## IV. SCOPE OF REVIEW

### A. *Challenge to Method or Application*

In both actions, Trailer Train contends that the trial courts erred because they did not use the independent judgment standard of review when evaluating the Board's decisions.[12] *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d at pages 20-23, sets out the standard of judicial review of an administrative assessment decision. In *Bret Harte,* the California Supreme Court distinguished between the standard to be applied to challenges to the application of a sound valuation method and challenges to the validity of the method itself. ▮▮▮ When the taxpayer claims that the Board of Equalization erroneously applied a valid method of valuation,

---

[12]The trial court in the escape assessment action did not specify which standard of review it used. However, the trial court's minute order stated that "[t]he administrative record discloses that sufficient evidence was presented to support the higher valuation." As both parties presume that this means the trial court applied the substantial evidence test, we also proceed from this assumption.

the Board's decision is equivalent to a determination of a trial court; the trial court may review only the administrative record. In this circumstance, the trial court is faced with a question of fact and may overturn the Board's decision only when no substantial evidence supports it; if no substantial evidence exists, the Board's actions are deemed so arbitrary that they constitute a deprivation of property without due process. On the other hand, when the taxpayer challenges the validity of the valuation method itself, the trial judge is faced with a question of law and may take new evidence at trial when deciding whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. (*Id.*, at p. 23.)

 In the first action, the issue is not whether either of the valuation methods used is itself proper, but whether, when applying the valid valuation methods, the Board should reduce the assessed value of the fleet of flatcars for functional obsolescence. When reviewing this challenge to the application of the cost and income methods, the trial court was faced with a question of fact and was to determine only whether the Board findings were supported by substantial evidence in the administrative record. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra*, 16 Cal.3d at p. 23; *ITT World Communications, Inc.* v. *County of Santa Clara* (1980) 101 Cal.App.3d 246, 257 [162 Cal.Rptr. 186] [contention that proper deductions were not allowed may be construed as argument that Board erroneously applied an intrinsically sound method of valuation]; *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 179 [116 Cal.Rptr. 160] [taxpayer who claims board did not give depreciation deduction does not raise challenge to method, but merely suggests an alternative method of valuation].) This is precisely what the trial court did when ruling on the motion for summary judgment. (See fn. 12, *ante*.)

 In the second action, Trailer Train also contends that the trial court should have exercised its independent judgment when reviewing Board findings. The trial court, after considering the *Bret Harte* case, indicated that it would apply the independent judgment test to the extent that Trailer Train challenged the validity of the method the Board employed, but that it would review all other issues using the substantial evidence test. The trial court's careful application of these differing standards of review is precisely that set out in *Bret Harte* and is consistent with our determination of the standard of review properly applied by the trial court in the 1976 escape assessment action. As the trial court indicated, "[t]here is often a fine line between a challenge to a method of valuation (a question of law) and the application of a method (a question of fact)." (Ehrman & Flavin, Taxing Cal. Property (2d ed. 1979) § 30.10, p. 700.) The trial judge correctly made

the subtle distinctions *Bret Harte* requires. The trial court applied the proper standards of review in the 1977-1980 tax year actions.

Trailer Train also contends in the second action that the trial court, purporting to apply *Bret Harte,* misapplied it when finding that the selection of the method of valuation and the weight to be given to a particular value indicator rests in the Board's sound discretion. Trailer Train contends that this is "curious and contradictory" because, under *Bret Harte,* the "Board's selection of valuation methods is a question of law." Trailer Train misconstrues the meaning of *Bret Harte.*

 *Bret Harte* sets the standard of review that the trial court must use when a taxpayer challenges the *validity* of a particular method of valuation by contending that it does not produce a value that constitutes fair market value within the meaning of the California Constitution. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d at p. 23.) However, *Bret Harte* does not purport to overturn the established rule that, faced with several valid methods of valuation, the Board's *selection* of a method, including the choice to apply a particular combination of methods, rests in its discretion. (*De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564 [290 P.2d 544]; *ITT World Communications, Inc.* v. *County of Santa Clara, supra,* 101 Cal.App.3d at p. 252 [applying both *De Luz* and *Bret Harte*].) The challenged finding refers to the Board's selection from among valid methods of valuation, not the sort of challenge to the validity of a method that triggers *Bret Harte*'s higher standard of review. The trial court made this distinction; it did not misapply *Bret Harte* nor make inconsistent findings.

## B. *Fundamental Vested Right*

, Nevertheless, Trailer Train argues in both actions that the independent judgment test should apply because the Board did not have constitutional authority and because its decision affected a fundamental vested right. In most instances, when an adjudicatory decision made by an administrative agency affects a fundamental vested right, courts must make an independent judicial review of that decision; a fundamental vested right is too important to relegate it to exclusive administrative extinction. However, this rule does not apply to decisions of *all* administrative agencies. Review of a decision rendered by an agency of constitutional origin, granted limited judicial power by the state constitution itself, is limited to a determination of whether the agency's findings are supported by substantial evidence. This substantial evidence rule applies whether or not the agency decision affects a fundamental vested right. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35 [112 Cal.Rptr.

805, 520 P.2d 29]; *Washington* v. *State Personnel Bd.* (1981) 127 Cal.App.3d 636, 639-640 [179 Cal.Rptr. 637]; see 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 265, pp. 892-893.) The California Supreme Court has cited the State Board of Equalization as an agency of constitutional origin. (*Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d at p. 35 [citing *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 131 [173 P.2d 545] (revoking liquor license)]; *Cochran* v. *Board of Supervisors* (1978) 85 Cal.App.3d 75, 80 [149 Cal.Rptr. 304]; see Cal. Const., art. XIII, § 19 [requiring Board to assess car company property].) The Board having acted pursuant to its constitutional authority, the trial court properly applied the substantial evidence test.[13]

█ Finally, Trailer Train contends that the burden of proving the validity of an escape assessment should be on the Board, rather than the taxpayer, because the Board is, in effect, challenging its original assessment. Courts have long presumed that the Board assesses all property correctly, placing on the taxpayer the burden of proving that an assessment is incorrect. (*Utah Construction Co.* v. *Richardson* (1921) 187 Cal. 649, 654 [203 P. 401]; see *ITT World Communications, Inc.* v. *County of Santa Clara*, *supra*, 101 Cal.App.3d at p. 257.) The presumption of correctness has also been cited in at least one escape assessment case. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco*, *supra*, 16 Cal.3d at p. 21.) Trailer Train cites only treatises and out-of-state authority in support of its contention. We are not persuaded that we should deviate from established California law.

## V. ESCAPE ASSESSMENT PROCEDURE

█ In the first action, Trailer Train contends that the Board abused its discretion when it used the subsequent valuation rather than the original one. It argues that the Board could not legally use the subsequent valuation—eliminating the claim for functional obsolescence—because the staff did not conduct an audit that complied with Board procedures (see Cal. Admin. Code, tit. 18, § 191) and because the staff did not reappraise the entire fleet as required by section 11315.

Trailer Train reads its cited authority too broadly. Section 11315 does not require a reappraisal of the entire fleet, but only an appraisal of the portion of the property that escaped assessment. In this case, the escape assessment was triggered by the *lack* of data, not additional data that would

[13]Because we find that the Board acted as a constitutional agency, we need not resolve Trailer Train's further contention that the decisions affected fundamental vested rights.

justify a traditional audit. (See Civ. Code, § 3532 [the law does not require idle acts].) In any event, the trial court found that Bischof reviewed the entire original appraisal and the data underlying it. The audit regulation requires the Board to advise the taxpayer in writing of the findings based on the audit and to give the taxpayer an opportunity to respond to the new findings. (Cal. Admin. Code, tit. 18, § 191.) Trailer Train does not allege that it did not understand the basis of the escape assessment as a result of this alleged violation. Trailer Train may complain that it did not have written notice of the audit findings *before* the escape assessment was levied, but it received sufficient notice and ample opportunities to be heard to satisfy us that the Board substantially complied with the regulation.

█ Trailer Train also suggests that the Board should have readjusted the 80 percent cost method/20 percent income method weighting after it disallowed the functional obsolescence claim in the 1976 escape assessment. The trial court found that the 80/20 weighting was appropriate even after deletion of the amount attributable to the functional obsolescence claim. The selection of a particular method of valuation from among valid methods, including the choice of combining methods at a particular ratio, rests in the Board's discretion. (*De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d at p. 564; *ITT World Communications, Inc.* v. *County of Santa Clara, supra,* 101 Cal.App.3d at p. 252.) The Board did not abuse its discretion when using the subsequent appraisal, rather than the original appraisal allowing the claim for functional obsolescence.

### VI. SUFFICIENCY OF EVIDENCE

█ In the first action, Trailer Train contends that, even if the substantial evidence test did apply, the trial court erred in finding that substantial evidence existed to support the Board's findings. Specifically, Trailer Train challenges the Board finding that, "[w]ith some reservations as to the accuracy of Petitioner's claimed obsolescence, and lacking an independent staff analysis, the staff allowed subject to audit the total reported obsolescence." Trailer Train cites selected portions of the record that it believes tend to rebut these findings. However, we must review the *entire* record to determine whether the findings are supported by substantial evidence. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda, supra,* 41 Cal.App.3d at p. 176.)

Internal staff correspondence before the original assessment was completed clearly establishes staff concern about the functional obsolescence claim at the earliest stages of the original appraisal. The original appraisal was reviewed by a supervisor, but the record indicates no evidence to support Trailer Train's contention that this constituted an "independent staff anal-

ysis." ▇▇▇▇ Finally, *all* claims made by taxpayers are necessarily made subject to audit. (See §§ 11652-11654 [board may request and car company must maintain records and data under PRCTL].) Although Trailer Train contends that a Board staff member testified that the appraisal was not susceptible to audit, the cited record does not support this contention.[14]

Finally, Trailer Train contends that, by finding that the escape assessment was based on a matter of opinion, the trial court found, in effect, that another Board finding was incorrect—that Bischof concluded that "the staff had erred by allowing all the taxpayer's claimed loss in value due to obsolescence." Because we find that the Board must levy an escape assessment regardless of whether it is based on objective error or a matter of opinion (see part III, *ante*), we need not address this contention.

### VII. TRIABLE ISSUE OF FACT

In its final contention in the first action, Trailer Train argues that the trial court erred in granting the Board's motion for summary judgment because it presented a triable issue of fact—whether the Board was improperly influenced by the need to issue a refund to Trailer Train when levying the escape assessment.[15] The trial court granted the Board's motion for summary judgment on the third cause of action—denial of due process—finding that Trailer Train had "been unable to present any *facts* to support [its allegations]. *No evidence* of improper motives on the part of the Board for levying the escape assessment has been presented . . . ." (Italics added.)

▇▇▇▇ Under Code of Civil Procedure section 437c, a trial court faced with a motion for summary judgment must decide whether the plaintiff has presented any *facts* that give rise to a triable issue or defense. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555 [122 P.2d 264]; *Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 608 [176 Cal.Rptr. 824].) Trailer Train's contention that the Board acted from an improper motive when levying the escape assessment is pure speculation. In documents and by questioning at the administrative hearing, Trailer Train

---

[14]When asked by Trailer Train's counsel "[s]o here the type of determination you made for Trailer Train's functional obsolescence really isn't subject to audit *in any usual sense,*" the supervisor replied, "[w]ell, I guess what you're saying, not in the usual sense, *but* I think it can be checked, and I think it would be desirable to try and check it."

[15]After the administrative hearing was complete, Trailer Train also challenged that the Board's decision to levy the escape assessment "was improperly affected by its interest in maximizing the Private Railroad Car Tax funds because they are the sole or primary support for its state assessment activities." This claim was not raised at the administrative hearing and the record on appeal in the escape assessment action discloses no evidentiary support for it. As such, we do not consider this question in the first action. (See part VIII, *post,* for discussion of this issue in the second action.)

attempted to suggest that the escape assessment was recommended to offset a substantial refund on which both parties had agreed (see fn. 4, *ante*). At the administrative hearing, Bischof testified that he did not recommend the escape assessment as a means of offsetting the refund, that he considered the refund and the escape assessment to be "entirely separate issues." This is the only *evidence* in the administrative record on this issue. Faced with this uncontroverted evidence, the trial court had no choice but to grant the Board's motion for summary judgment on the third cause of action as a matter of law. (See Code Civ. Proc., § 437c, subd. (c).) Trailer Train's "evidence" of improper motive, stripped of its verbiage, does not rise above """"mere guesswork and general conjecture."""" (See *Estate of Ross* (1962) 204 Cal.App.2d 82, 94 [22 Cal.Rptr. 135]; see also *C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d at p. 743.)

## VIII. DUE PROCESS

In the second action, Trailer Train contends that the Board is inherently incapable of providing it with a hearing that comports with due process. Trailer Train raises five different grounds to support its claim: (1) that the Board has a financial interest in the outcome of the valuation process; (2) that Board counsel represented both the Board and the staff, an adversary party before the Board; (3) that the Board staff secretly advised the Board ex parte, an improper act for an adversary; (4) that the Board imposed an excessive burden of proof on Trailer Train; and (5) that the Board denied Trailer Train the right to cross-examine a witness about confidential information on which the witness relied. The trial court rejected each contention in its findings of fact. An amicus brief filed by the State Tax Subcommittee of the Railway Progress Institute details the legal basis for Trailer Train's due process challenge.

On appeal, Trailer Train contends that none of these findings are supported by substantial evidence. To remedy this due process violation, Trailer Train would have this court strike down the PRCTL as unconstitutional.

As the Board indicates in its brief, Trailer Train's opening brief does not comply with the rules of court. (See Cal. Rules of Court, rule 13.) Trailer Train contends that the trial court's factual findings on the due process issues are incorrect, but cites only evidence that supports its position in its statement of facts, ignoring all evidence to the contrary. A reviewing court must presume that the record contains evidence to support every trial court finding of fact, and an appellant which contends that some particular finding is not supported must set forth in its brief a summary of the material evidence on that issue. Unless the appellant does so, the error assigned is deemed to be waived. The appellant must state fully, with transcript references, the

evidence that it claims to be insufficient to support the trial court's findings. It is neither practical nor appropriate for us to comb the record on Trailer Train's behalf (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887-888 [160 Cal.Rptr. 516, 603 P.2d 881]; *City of Lomita* v. *City of Torrance* (1983) 148 Cal.App.3d 1062, 1069 [196 Cal.Rptr. 538]), especially when the record is as extensive as it is in this appeal. Trailer Train's brief does not contain a complete statement of facts pertinent to the substantial evidence issues raised; therefore, we discuss the legal questions involved while presuming that the underlying trial court findings of fact are supported by substantial evidence.[16]

The trial court found that Trailer Train did not prove the underlying, foundational facts necessary to establish four of its five due process claims when it found that Trailer Train did not establish a connecting link between the PRCTL revenues and the Board's budget, that the Board separated its chief counsel's advice to the Board and its staff presentation so as not to constitute a conflict of interest, that Board findings were not based on considerations outside the record, and that the Board decided the assessment cases on the "weight of the evidence" before it.[17] ▪ Although the due process challenge raises questions of law (see *Service Employees Internat. Union* v. *City of Santa Barbara* (1981) 125 Cal.App.3d 459, 469 [178 Cal.Rptr. 89]), the trial court's findings of fact underlying the claims are binding on this court if supported by substantial evidence. (See *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621] [appellate court must measure facts, as found by trier of fact, against constitutional standard].) We presume that these findings of fact are supported by substantial evidence because of defects in Trailer Train's brief. (See *In re Marriage of Fink, supra,* 25 Cal.3d at pp. 887-888.) Trailer Train has failed to establish the factual underpinnings of four of its five due process claims; thus, these claims fail.

---

[16]Even if we did not employ this presumption, we would uphold the trial court's findings. We have reviewed the record on appeal and find the trial court's findings of fact on all due process contentions to be supported by substantial evidence. (See fn. 17, *post.*)

[17]Trailer Train also contends that the trial court applied erroneous legal standards when evaluating its due process claims. This contention fails to distinguish between the legal questions posed by the due process claims and the foundational facts that must be established before reaching those legal questions. Because the trial court found against Trailer Train on the foundational facts underlying four of its five due process claims, the trial court did not even need to reach the questions of law posed by these four claims. For example, Trailer Train did not establish the underlying fact of any link between the PRCTL revenues and the Board's budget. Without this link, the presumption that the Board is biased does not arise. Contrary to Trailer Train's contention, no one—not the Board, the trial court, or this court—has required it to establish actual bias contrary to established due process principles (see, e.g., *Ward* v. *Village of Monroeville* (1972) 409 U.S. 57 [34 L.Ed.2d 267, 93 S.Ct. 80]), only that it first establish the fact of an actual link between revenues and budget. This actual link would then trigger the presumption of bias established in *Ward*. Trailer Train has, quite simply, failed to prove this essential fact underlying its due process contention.

On Trailer Train's final ground of due process error, the trial court made no findings of fact; it found only that the documents Trailer Train sought to assist it in cross-examining a witness who relied on them were confidential and could not be disclosed. Because this claim involves a question of law (see *L.A. Teachers Union* v. *L.A. Cty. Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827]; *Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 135 [161 Cal.Rptr. 532]; see generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 241, pp. 246-247), we must decide it.

A Board witness testified that, out of 175 to 200 private car assessments, the cost method was used in all but 6 or 8 cases. When the witness began to distinguish those 6 or 8 assessments from that of Trailer Train, Trailer Train objected to the use of the testimony, in part, because the Board would not disclose the documentary taxpayer information about these 6 or 8 companies on which the witness relied. Trailer Train contends that the trial court's act of overruling its objection and permitting this testimony constituted a denial of its right to cross-examine witnesses.

The trial court properly ruled that Trailer Train was not denied the right of cross-examination with respect to this witness' testimony. Section 11655 provides that, subject to limited exceptions not applicable in this action, "all information and records relating to the business affairs of persons required to report to the board pursuant to this part shall be held secret by the board." (§ 11655, subd. (a).) The documents sought to be disclosed come within the meaning of this provision. (§§ 11652-11654.) As such, the Board had an obligation not to disclose the information to Trailer Train; there was no denial of its right to cross-examine the witness. In summation, Trailer Train has not established any of its several due process challenges.

## IX. Choice of Valuation Method

Finally, we reach the heart of Trailer Train's case in the second action—that the Board should have used the income capitalization method rather than the replacement cost method when valuing its fleet. In support of this argument, Trailer Train contends that: (1) its income is regulated by the ICC; (2) its income is comparable to what a reasonable purchaser could earn; (3) it suffered unusually high obsolescence; and (4) the Board violated its own rules (see Cal. Admin. Code, tit. 18, §§ 6, 8) by applying the cost method instead of the income method.[18] The trial court found against Trailer Train on each point raised.

---

[18]Rule 6 of the Board's property tax rules (Cal. Admin. Code, tit. 18, § 6, subd. (a)) provides that the "replacement cost approach to value is . . . preferred when . . . reliable

Key evidence brought out at trial persuades us to come to the same conclusion that the trial court did. Trailer Train reported to the Securities and Exchange Commission that it is *not* regulated by the ICC, although the ICC may prescribe the form of its records and inspect them. A resolution of the Board of Directors of Trailer Train established that the company does not even attempt to maximize profits. Trailer Train's rates were even lower than the ICC interchange rates—rates that were never intended to provide a profit but only to provide for cost recovery, rates that even the ICC now regards as inadequate.

■ The question of whether the Board violated its own rules when applying the cost method or refusing to apply the income method is a question of law. The agency's own interpretation of its regulation is entitled to great weight. (See *Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60, 65 [219 Cal.Rptr. 142, 707 P.2d 204]; *American Hospital Supply Corp.* v. *State Bd. of Equalization* (1985) 169 Cal.App.3d 1088, 1092 [215 Cal.Rptr. 744]; see also *Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86, 93.)

■ By its directors' statement, Trailer Train acknowledges that its rates are not designed to generate an adequate profit. It does not charge even what the ICC does for interchange rates. Thus, as the Board and the trial court found, use of the income method would *not* calculate the fair market value of the fleet because the Board's rules provide for using the income method only when the taxpayer earns a reasonable profit on its property. (See Cal. Admin. Code, tit. 18, §§ 6, subd. (a), 8, subd. (a).) Because Trailer Train's claim of abnormal obsolescence depends on the assumption that its rates include an allowance for a reasonable profit, its obsolescence claim fails as well. When reliable income data is not available, the cost method is preferred over the income method (Cal. Admin. Code, tit. 18, § 6, subd. (a)); because we are persuaded that Trailer Train's rates were not regulated, its contention that the cost method is not applicable fails.

Faced with two or more valid, accurate methods of calculating fair market value, the Board, subject to requirements of fairness and uniformity, may exercise its discretion in using one or more of them. (*De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d at p. 564; *ITT World Communications* v. *County of Santa Clara, supra,* 101 Cal.App.3d at p. 252.) We

income data [is not] available and when the income from the property is not so regulated as to make such cost irrelevant." Rule 8 (Cal. Admin. Code, tit. 18, § 8, subd. (a)) provides that the "income approach to value . . . is the preferred approach . . . [of] appraisal . . . when reliable sales data are not available and the cost approaches are unreliable because the reproducible property has suffered considerable . . . functional obsolescence or economic obsolescence . . . or is subject to legal restrictions on income that are unrelated to cost."

find that the Board properly exercised its discretion in accordance with its rules.

## X. Conclusion

We have thoroughly reviewed each issue Trailer Train raised in both appeals and we find no merit in any of them. The judgments are affirmed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied May 28, 1986, and appellant's petition for review by the Supreme Court was denied August 13, 1986.